Charles P. WAGNER,
Appellee/Cross-Appellant,

v.

INTERNATIONAL HARVESTER
COMPANY,
Appellant/Cross-Appellee,

v.

BRECKENRIDGE ELECTRIC, INC., and
Arnold's Equipment, Inc., Appellees.

Nos. 79–1188, 79–1201.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1979.

Decided Dec. 5, 1979.

---

John E. Castor, Castor, Ditzler & Klukas, Minneapolis, Minn. (argued), and Ann J.

McGee, Minneapolis, Minn., on brief, for International Harvester.

Peter G. Van Bergen, Cousineau, McGuire, Shaughnessy & Anderson, Minneapolis, Minn., for appellee, Breckenridge, etc.

Eugene J. Flick, Jardine, Logan & O'Brien, St. Paul, Minn., for appellee, Arnold, etc.

William D. Flaskamp, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, Minn. (argued), Gary W. Hoch, Robert R. Barth and Roger L. Meller, Jr., Best & Flanagan, Minneapolis, Minn., on brief, for appellee, Wagner.

Before BRIGHT and HENLEY, Circuit Judges, and MARKEY, Chief Judge.*

BRIGHT, Circuit Judge.

Charles Wagner brought this products liability action against International Harvester Company (IHC) to recover damages for bodily injuries sustained in the rollover of an IHC Model 500C crawler tractor which Wagner had been operating.[1] IHC in turn filed a third party complaint seeking contribution or indemnity against Wagner's employer, Breckenridge Electric, Inc. (BEI), and Arnold's Equipment, Inc. (Arnold's), the local IHC dealer that had leased the tractor to BEI. These actions were joined for trial. On a special verdict the jury found IHC entirely responsible for Wagner's injuries and assessed damages at $1,600,000. The district court[2] entered judgment against IHC in accordance with this verdict and dismissed IHC's third party complaint against BEI and Arnold's. Subsequently, the district court denied motions by IHC for judgment notwithstanding the verdict or, in the alternative, for a new trial. IHC brings this timely appeal from the judgment of the district court. (No.

---

\* HOWARD T. MARKEY, Chief Judge, United States Court of Customs and Patent Appeals, Washington, D. C., sitting by designation.

1. Jurisdiction of the district court was predicated on diversity of citizenship and the requisite amount in controversy. 28 U.S.C. § 1332

(1976). Minnesota law governs the substantive issues in this case.

2. The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota.

79–1201.) Wagner cross-appeals from the judgment, contending that the trial court erred in rejecting as a matter of law Wagner's claim for punitive damages. (No. 79–1188.) Having reviewed the record, we affirm.

## I. Factual Background.

In August 1971, BEI was engaged in burying telephone cable in northwestern Minnesota. Its equipment at that time included a large crawler tractor that dug and then laid cable in a narrow trench, and the small Model 500C crawler tractor in issue here, which smoothed the ground behind the larger tractor. IHC had sold the 500C crawler to Arnold's on May 25, 1971; Arnold's in turn leased it to BEI on August 2, 1971. Arnold's employees at that time showed Allen Lindseth, a BEI employee assigned to operate the unit, how to handle the controls. Lindseth ran the crawler approximately forty hours.

When Lindseth decided to leave BEI, Frank Burton, BEI's field supervisor, offered Wagner the job of operating the 500C. Wagner until this time had worked at guiding the cable into the ground. He, like Lindseth, was twenty years old. He had been raised on a farm and had driven many different wheeled tractors, but never a crawler tractor. Burton told Lindseth to instruct Wagner in the operation of the 500C. For three to four hours on August 16, Lindseth worked with Wagner, first demonstrating the various control mechanisms and then observing and directing Wagner as he operated the crawler.

At about 5:00 p. m. on August 16, Wagner backed the crawler down a ditch, worked there for a while, and then attempted to ascend to the road. As the front of the dozer blade reached the top of the ditch, the left track began to slip, the crawler

turned to the left, and then it rolled over. Wagner was pinned beneath the heavy crawler; in addition to being crushed, he was severely burned by hot transmission fluid flowing from a breather cap located in front of the operator's seat and between his legs.

In his lawsuit Wagner claimed breach of warranty,[3] negligence and strict liability chiefly with respect to the instability of the crawler, the absence of rollover protection, and the design and placement of the transmission fluid filler pipe and breather cap. The jury found IHC negligent in all three respects. The jury also determined that the crawler was in a defective condition when it left IHC's control because it was not equipped with a rollover protective device as standard equipment, and it found that the type or location of the transmission fluid filler pipe and breather cap was a design defect. The jury determined, however, that use of a left-foot decelerator pedal on the crawler did not constitute a design defect, and it also found that IHC had provided adequate warnings and instructions for the operation of the crawler. The jury absolved Wagner, BEI, and Arnold's of any negligence, attributing fault solely to IHC.

## II. IHC's Appeal.

### A. The Stability Issue.

In the first of its answers to special verdict questions, the jury found IHC to have been "negligent in its design, testing, or manufacture of the 500C tractor with reference to its stability *or* the use of a left foot decelerator." (Emphasis added.) However, the jury's third special verdict answer found that the design of the 500C was not defective insofar as it incorporated a left-foot decelerator.[4] IHC argues that

---

3. Wagner withdrew his warranty claims before the case was submitted to the jury.

4. The first three questions answered by the jury in its special verdict read as follows:

 1. Was International Harvester Company negligent in its design, testing, or manufac-

ture of the 500C tractor with reference to its stability or the use of a left foot decelerator?

 <u>Yes</u>
 "Yes" or "No"

 2. Was such negligence a direct cause of the accident and resulting injury to Charles P. Wagner?

 <u>Yes</u>

because Wagner failed to prove any other instability in the crawler, these two special verdict answers are inconsistent, entitling IHC to a new trial. *See, e. g., Fugitt v. Jones,* 549 F.2d 1001 (5th Cir. 1977). We reject this contention.

■ We agree that, in light of the jury's finding of nondefectiveness, the installation of a left-foot decelerator on the 500C must be considered not to have been negligent. *Halvorson v. American Hoist & Derrick Co.,* 307 Minn. 48, 240 N.W.2d 303 (1976). Under Minnesota law, however, a verdict of nondefectiveness does not preclude a finding of negligence based in part on other grounds—*e. g.,* failure to warn. *Bigham v. J. C. Penney Co.,* 268 N.W.2d 892, 896 (Minn.1978).[5] In this case, the disjunctive and general form of the first special verdict question directly suggests an alternative basis for the jury's initial finding of negligence. Because the record in this case contains substantial evidence of negligence in the "design, testing, or manufacture of the 500C tractor with reference to its stability" apart from possible instability due to the left-foot decelerator, we find that the jury's first and third answers here are reconcilable.

The record reflects that IHC failed to conduct certain tests that may have been relevant to the crawler's stability. This evidence can be viewed apart from plaintiff Wagner's claim that a sudden release of the decelerator pedal made the 500C dynamically unstable. Moreover, one of plaintiff's expert witnesses testified that smaller crawlers like the 500C were less stable than large ones, and that consequently they could tip over more easily. A second expert witness echoed this testimony and stated that the diminished stability of a small tractor made rollover protection imperative. In light of this evidence, the jury's verdict regarding stability should be read in conjunction with its findings on the issues of rollover protection and the placement of the transmission breather cap and filler pipe. Rather than demonstrating any inconsistency, the verdict of negligence "with reference to stability" is entirely consistent with, and indeed reinforces, the jury findings addressing the adequacy of protection afforded crawler operators in the event of upset.[6]

### B. *The Claim of Misuse.*

■ IHC argues that the district court should have found as a matter of law that the 500C crawler was not defective and that IHC was not negligent. This follows, IHC contends, because the crawler was misused in a manner not reasonably foreseeable by IHC, and misuse was the proximate cause of Charles Wagner's injuries. *See Restatement (Second) of Torts* § 402A, comments g and h; *Magnuson v. Rupp Manufacturing, Inc.,* 285 Minn. 32, 171 N.W.2d 201, 206 (1969). Specifically, IHC argues that Wagner's employer misused the crawler by permitting its operation by an unskilled and poorly trained operator under unsafe circumstances, whereas IHC anticipated use by a properly instructed operator in safe circumstances.

---

"Yes" or "No"
3. Was the design of the 500C tractor defective by reason of its being designed and equipped with a left foot decelerator?

<u>No</u>
"Yes" or "No"

**5.** This rule reflects the more general seventh amendment principle that an appellate court must view a case in a way that reconciles, if possible, the jury's answers to special interrogatories. *Gallick v. Baltimore & Ohio R. Co.,* 372 U.S. 108, 119, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963); *A. & G. Stevedores v. Ellerman Lines,* 369 U.S. 355, 364, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962); *Gonzales v. Missouri Pacific R. Co.,* 511 F.2d 629, 633 (5th Cir. 1975).

**6.** Apart from the substance of IHC's inconsistency claim, we note that IHC did not object to the form of the special verdict or demand that the issue of instability be submitted independently. *See* Fed.R.Civ.P. 49(a). Moreover, IHC expressly declined to have the jury resume its deliberations in an effort to resolve any inconsistency in the verdict answers at issue here. *Cf.* Fed.R.Civ.P. 49(b) (in specific cases of inconsistency between a general verdict and answers to interrogatories, court may or must return the jury for further consideration of its answers and verdict). If inconsistency were actually present in this case, we might well consider IHC estopped from demanding a new trial. *Cf. Seven Provinces Ins. Co., Ltd. v. Commerce & Indus. Ins. Co.,* 65 F.R.D. 674, 690 (W.D.Mo.1975) (similar suggestion).

Contrary to IHC's argument, we believe the record supports a finding that IHC should have reasonably foreseen use of the 500C by operators having limited training and experience. Further, the evidence does not establish that there was product misuse in this case as a matter of law. Wagner received some training, and at the time of the accident he was operating the crawler in customary fashion upon a moderate slope. The parties disputed the cause of this accident. Reasonable people could differ on the conclusions to be drawn from the evidence. Thus, the district court did not err in refusing to dismiss this action on the basis of product misuse.

## C. *Rollover Protection and Placement of the Breather Cap.*

At trial Wagner asserted that he would not have suffered such extensive injuries when the 500C crawler tipped over if IHC had provided rollover protection for the operator and if it had not located the transmission breather cap between the operator's legs. In its special verdict the jury found the crawler defective and IHC negligent on both counts. Notwithstanding the testimony of three expert witnesses in support of Wagner's allegations, IHC argues that the proof underlying the jury's conclusions was insufficient. We disagree.

This court has held that a manufacturer must consider the environment in which its product is used. Where a product cannot be used as intended without a known risk of accidents, the manufacturer must design that product with reasonable care so as to minimize the damage or injury arising in the event of accident. *Larsen v. General Motors Corp.*, 391 F.2d 495 (8th Cir. 1968). That is to say, a manufacturer is liable not only for defects that cause accidents, but also for defects that predictably enhance resultant injuries. In this case, the jury in effect found that both the absence of rollover protection and the design or

placement of the transmission fluid breather cap constituted "enhanced injury" defects in the Model 500C crawler.[7]

Whether a manufacturer should be held liable for enhanced injuries turns on general negligence principles. *Larsen v. General Motors Corp., supra*, 391 F.2d at 502. If the likelihood of harm multiplied by its probable magnitude is greater than the cost of preventing that harm, then failure to take the necessary precautions makes the product unreasonably dangerous. *Id.* at 502 n.3.

IHC argues initially that the absence of rollover protection did not make the 500C crawler unreasonably dangerous because the danger of rollover and resultant injuries was within the contemplation of the ordinary consumer or crawler operator. *See Restatement (Second) of Torts* § 402A, comment i; *Orfield v. International Harvester Co.*, 535 F.2d 959 (6th Cir. 1976). In *Orfield, supra*, a crawler operator with thirty years' experience was injured by a falling tree while windrowing brush without a protective overhead canopy. The operator, who was held to be an ordinary consumer, testified that he was fully aware of the substantial hazards presented by that activity, and the court directed a verdict for the defendant. In this case the record reflects no comparable consumer knowledge of the danger of rollover, and the district court did not err in submitting the issue of IHC's liability to the jury.

IHC next argues that the likelihood of a 500C tipping over was so small (and the cost of rollover protection so great) that it should not be held liable. The record reflects, however, that approximately 30,000 tractor operators had been crushed in rollover accidents before 1971. Although most of these accidents involved less stable wheeled tractors, the jury could consider that evidence and draw from it the conclu-

---

7. Under Minnesota law, a defect must exist before a manufacturer can be held liable in negligence for failure to remedy it. *Halvorson v. American Hoist & Derrick Co., supra*, 240 N.W.2d at 307. Although a defect can be found absent any negligence, *see Restatement (Second) of Torts* § 402A(2)(a), we treat the jury findings of negligence and strict liability here as coterminous.

sion that IHC should have foreseen rollovers of Model 500C crawlers.

Lastly, IHC argues that it fully satisfied its duty of reasonable care by making rollover protection available and advertising it as optional equipment. *See Biss v. Tenneco, Inc.,* 64 A.D.2d 204, 409 N.Y.S.2d 874 (1978). *Contra, Robinson v. International Harvester Co.,* 44 Ill.App.3d 439, 3 Ill.Dec. 150, 358 N.E.2d 317 (1976), *rev'd on other grounds,* 70 Ill.2d 47, 15 Ill.Dec. 850, 374 N.E.2d 458 (1978). According to this theory, the purchaser of multi-use equipment knows best the dangers associated with its particular use, and so it should determine the degree of safety provided. That is to say, the purchaser may be in the best position to make the cost-benefit analysis implicit in the principles of general negligence. Imposing liability on such a purchaser would result in minimizing the sum of accident and preventive costs.

While we accept this theory as basically sound, the facts of this case do not support its application here. In 1971, IHC did not offer a rollover protective structure satisfying Society of Automotive Engineers (SAE) standards as optional equipment on the 500C.[8] IHC did offer as an optional item a so-called ESCO canopy, which apparently would survive rollovers. However, IHC advertised that canopy as a device providing overhead protection in the timber industry; the ESCO canopy in 1971 was neither tested nor marketed for rollover protection. It is unrealistic to expect a 1971 purchaser of the 500C to know that overhead protection and rollover protection were both incorporated in the ESCO canopy, and it would be inappropriate to impose liability on such a purchaser.

■ In sum, appellee Wagner presented testimony of expert witnesses together with other evidence from which the jury could conclude that IHC was negligent and the 500C crawler defective because it was sold without rollover protection.

■ Wagner also introduced substantial evidence that supports the jury's verdicts regarding the design or placement of the transmission fluid filler pipe and breather cap. IHC knew of the dangers presented to the operator by engine fluids in the event of upset; indeed, an IHC engineer had authored a 1968 special report describing and warning of those dangers. Moreover, precautions that would have averted or mitigated the burns suffered by Wagner were very inexpensive. Thus the jury could find that placement of the vented breather cap between the operator's legs constituted both negligence and a design defect. Nor are we persuaded by IHC's proximate cause argument, that Wagner could well have sustained similar injuries from the hot transmission fluid if the breather cap had been located elsewhere. The evidence indicates that transmission fluid leaking from a location more distant from the operator would have cooled substantially as it traveled along the ground.[9]

### D. *IHC's Claim Against Breckenridge Electric, Inc.*

■ IHC argues that it is entitled to contribution from BEI because the latter's negligence proximately caused Wagner's injuries. IHC argues that BEI was negligent both in its routing of the cable-laying operation and in its use of the 500C as a training vehicle without adequate instruction, and that such activities required BEI to install rollover protection. The jury rejected those contentions and found that BEI had not been negligent. The jury's findings rest upon substantial evidence and will not be overturned on appeal.

---

8. We note in passing that IHC offered such rollover protective structures as optional equipment on all of its larger crawlers. The absence of such protection for the more vulnerable 500C supports the jury findings of negligence and defective design.

9. Counsel conceded at oral argument that it would be impossible to apportion Wagner's damages according to the source of his injuries. Hence, any one of three theories of liability (instability, failure to provide rollover protection, or location of the breather cap) would suffice to sustain the verdict against IHC.

E. *IHC's Claim Against Arnold's Equipment, Inc.*

██ IHC argues that if the jury findings establishing its liability for the absence of rollover protection are upheld, it should be granted a new trial to determine the amount of contribution owed it by Arnold's. If the absence of rollover protection on the crawler was a defect, IHC contends, Arnold's is also strictly liable to Wagner for its failure to provide that rollover protection. *See Restatement (Second) of Torts* § 402A.[10] Because IHC and Arnold's are both liable, IHC argues, IHC is entitled to recover contribution to the extent of Arnold's "comparative cause." *See Busch v. Busch Const., Inc.,* 262 N.W.2d 377, 393–94 (Minn.1977).

We reject IHC's argument. The jury verdict established not only that the crawler was defective but also that IHC was negligent in failing to provide rollover protection. The jury verdict further exonerated Arnold's from any negligence in not equipping the crawler with a rollover protective device. The evidence supports these findings. Arnold's was obliged to use IHC parts, but IHC neither supplied it with a rollover structure nor made any recommendations regarding one. IHC, on the other hand, possessed the knowledge and resources required to develop rollover protection, and its duty of reasonable care arguably included protecting the potential user from rollover injury. The jury findings indicate that IHC and not its local dealer stood in the best position to prevent injuries from rollover accidents.

██ In light of these jury findings placing the onus on IHC and not on Arnold's,

Minnesota law indicates that Arnold's would enjoy a right of total indemnification against IHC. *See Farr v. Armstrong Rubber Co.,* 388 Minn. 83, 179 N.W.2d 64, 72 (1970); *Frey v. Montgomery Ward & Co., Inc.,* 258 N.W.2d 782, 790–91 (Minn.1977) (concurring opinion). *Cf. Tolbert v. Gerber Industries, Inc.,* 255 N.W.2d 362 (Minn.1977) (denying indemnification where both parties were found culpably negligent). IHC has cited no Minnesota case for the proposition that a negligent party can recover contribution from a party that is not negligent.[11] We conclude that the district court properly denied IHC a new trial against Arnold's to recover contribution.

F. *Alleged Trial Court Errors.*

IHC claims that it is entitled to a new trial because the trial court erred (a) in excluding IHC movies of stability tests conducted at Antioch, Illinois; (b) in admitting an IHC advertising brochure referring to inexperienced operators; (c) in instructing the jury regarding the weight to be given industry custom; (d) in failing to give an IHC instruction defining intended user and unreasonable danger; and (e) in excluding the deposition testimony of Duane Hurd, who was a technical school instructor in the operator of heavy equipment. Having reviewed the record, we reject these claims of error.

██ The admissibility of experimental evidence rests largely within the discretion of the trial court, and its determination will not be disturbed on appeal unless that discretion is shown to have been abused. *Ramseyer v. General Motors Corp.,* 417 F.2d 859, 864 (8th Cir. 1969); *Collins v. B. F. Goodrich Co.,* 558 F.2d 908, 910 (8th Cir.

---

**10.** Although *Restatement (Second) of Torts* § 402A by its terms imposes liability only on one who sells a product in a defective condition, we believe the Minnesota Supreme Court would hold that this section encompasses an equipment lessor. *Cf. Clark v. Rental Equipment Co., Inc.,* 300 Minn. 420, 220 N.W.2d 507, 511 (1974) (equating the negligence of lessors and sellers who supply defective or potentially dangerous equipment). We note additionally that Arnold's was in the business of selling. *See Restatement (Second) of Torts* § 402(A)(1)(a) and comment f.

**11.** The notion of "comparative cause" (adapted from comparative negligence) can have no application where, as here, the negligence of one party has been found entirely responsible for the accident and resultant injuries. *Cf. Busch v. Busch Const., Inc., supra,* 262 N.W.2d at 393–94 ("comparative cause" applied where contributory negligence of the plaintiff was found to be a 15 percent cause of accident and defective vehicle was found to be an 85 percent cause).

1977). IHC was permitted to introduce movies of the 500C operating at the site of the accident, but the court excluded other movies taken under dissimilar conditions at IHC's testing grounds. No abuse of discretion exists in that ruling. *See* Fed.R.Evid. 403; *Wright v. Redman Mobile Homes, Inc.,* 541 F.2d 1096 (5th Cir. 1976). The trial judge also did not commit prejudicial error in excluding the deposition testimony of Duane Hurd. Mr. Hurd's testimony did not address either the adequacy of the training given Charles Wagner or the amount of training necessary to operate a 500C. *See* Fed.R.Evid. 402, 403. The trial court received testimony by other IHC witnesses concerning these matters as well as the training required to be a crawler operator generally.

The advertising brochure IHC sought to exclude stated that "any operator, regardless of experience, can get top productivity from the 500C." IHC argues that this statement refers solely to the 500C's productivity, and that because "operator" is a restricted term of art, the statement is irrelevant to the issue of intended user. The trial judge, after hearing full argument on this issue, did not agree. He forbade plaintiff's experts to employ the statement as a basis for their opinions, but he did permit the jury to consider the meaning of the statement by admitting it into evidence. *See* Fed.R.Evid. 401, 402. We find no prejudicial error in this ruling.

Finally, we hold that the trial court's instructions were proper. Under Minnesota law, observance of industry custom does not necessarily amount to due care. *Schmidt v. Beninga,* 285 Minn. 477, 173 N.W.2d 401, 408 (1970). Thus, the trial court did not commit prejudicial error in instructing the jury that "[t]he defendant cannot escape its duty of reasonable care simply by relying upon recommended practices and standards or custom and practices of the industry." *See General Insurance Co. of America v. Hercules Construction Co.,* 385 F.2d 13, 24 (8th Cir. 1967); *Lynch v. Travelers Indemnity Co.,* 452 F.2d 1065, 1067 (8th Cir. 1972). That part of IHC's proposed instructions which defined intended users and unreasonable danger does not,

as IHC claims, correctly reflect the rule of *Restatement (Second) of Torts* § 402A, comment i. That rule speaks to the degree of foreseeable danger, not the extent of resultant harm. Hence, the trial court did not commit prejudicial error in deleting IHC's proposed instruction.

### III. *Wagner's Cross-Appeal.*

Wagner contends that the district court erred in denying him leave to amend his complaint to raise the issue of punitive damages, and in refusing to submit the issue of punitive damages to the jury. Wagner asks this court to remand the case for trial on that issue. We decline to do so. The district court determined that there was insufficient evidence to support a claim for punitive damages. Having reviewed the record, we agree. We deem the appeal on this issue to border on the frivolous.

Accordingly, we affirm the judgment of the district court in all respects. Appellees BEI and Arnold's may tax costs as prevailing parties. No costs are awarded other parties.