FILED
United States Court of Appeals
Tenth Circuit

September 10, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

A.H., a minor, by and through his parent
and next friend, TONY HADJIH; TONY
HADJIH, individually,

Plaintiffs – Appellants,

v.

EVENFLO COMPANY, INC., a
Delaware corporation,

Defendant – Appellee.

No. 13-1403
(D.C. No. 1:10-CV-02435-RBJ-KMT)
(D. Colo.)

**ORDER AND JUDGMENT**\*

Before **BRISCOE**, Chief Judge, **MCKAY** and **PHILLIPS**, Circuit Judges.

The Evenflo Discovery Infant 316 Car Seat consists of two-pieces: a snap-in seat (the

"carrier") and a base. The car seat can be used in two ways: first, by securing the base

with the seat belt and then snapping the carrier into it, or, second, by securing the carrier

itself with the seat belt and not using the base at all.

On June 10, 2005, four-month-old A.H. was properly restrained in the back seat of the

Hadjih Family Jeep using the two-piece configuration of the Discovery model, which had

been properly installed. His mother, Razika Hadjih, misjudged traffic and pulled the Jeep

---

\* This order and judgment is not binding precedent except under the doctrines of law
of the case, claim preclusion, and issue preclusion. It may be cited, however, for its
persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth
Circuit Rule 32.1.

in front of an oncoming truck. The truck struck the passenger side of the Jeep, separating A.H.'s carrier, with him strapped in, from the base and sending it airborne into the back of the Jeep. The infant boy suffered a skull fracture and a severe traumatic brain injury that has left him permanently impaired.

On his own and A.H.'s behalf, A.H.'s father sued Evenflo, seeking damages under several theories, including defective design and failure to warn. Plaintiffs (the "Hadjihs") presented evidence sufficient for the jury to find that Evenflo knew or should have known before this accident that Discovery Infant 316 carriers were prone to detach from their bases. Even so, the district court directed a verdict for the defendants on the failure-to-warn claim. Addressing a separate issue, the district court also allowed a videotaped deposition of a defense witness over the Hadjihs' objection. After a nine-day trial, the jury rendered its verdict in favor of Evenflo on the remaining design defect claim.

After trial, the Hadjihs filed a motion for a new trial, arguing that the court erred in directing a verdict on the failure-to-warn claim and in allowing the videotaped deposition. The district court denied the motion, and the Hadjihs now present those issues on appeal.

## DISCUSSION

**1. Did the district court err by entering a directed verdict on the failure-to-warn claim?**

We review de novo a district court's order granting judgment as a matter of law, applying the same standard as the district court applies. *See Oja v. Howmedica, Inc.*, 111 F.3d 782, 792 (10th Cir. 1997). A district court may grant a motion for judgment as a

matter of law on an issue if it finds "that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). That standard is met "only when all the inferences to be drawn from the evidence are so in favor of the moving party that reasonable persons could not differ in their conclusions." *J.I. Case Credit Corp. v. Crites*, 851 F.2d 309, 311 (10th Cir. 1988) (internal quotation marks omitted).

In this diversity case, Colorado state law governs the substantive issues. *See, e.g., Pacheco v. Shelter Mut. Ins. Co.*, 583 F.3d 735, 737 n.4 (10th Cir. 2009). To survive a motion for a directed verdict, the Hadjihs had to present evidence of three elements: "(1) the existence of a duty on the part of the defendant to warn buyers of any dangers that were known or should have been known, (2) breach of that duty by the defendant, and (3) injury to the plaintiff resulting from that breach." *Grasmick v. Otis Elevator Co.*, 817 F.2d 88, 90 (10th Cir. 1987).[1]

After reviewing the record, we conclude that the Hadjihs presented sufficient evidence on each element of a failure-to-warn claim to warrant submission of the claim to the jury.

---

[1] The Colorado jury instruction on negligent failure to warn states: "If a (manufacturer) (seller) of (an article) (a product) knows or in the exercise of reasonable care should know that (1) the use of the (article) (product) may be harmful or injurious to a (consumer) (user), and (2) that risk of harm or injury is not obvious to a reasonable (consumer) (user), then the (manufacturer) (seller) must use reasonable care to warn the (consumer) (user) of the risk of harm or injury if a reasonably careful person would under the same or similar circumstances. The failure to do so is negligence." CJI-Civ. 4th 14:19 (4th ed.). The Hadjihs tendered a similar instruction to the district court in this case. R. vol. 1, at 254.

*First*, plaintiffs introduced evidence that Evenflo had a duty to warn of the dangers of carrier/base separation. A seller has a duty to "give adequate warning of an unreasonable danger not obvious to the user which the seller knows or should know is involved in the use of a product." *Bailey v. Montgomery Ward & Co., Inc.*, 635 P.2d 899, 899–900 (Colo. Ct. App. 1981); *see also Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187, 198 (Colo. 1984) (a seller has a duty to warn if it knows or should know about an unreasonable danger associated with its product and that danger is not obvious to users). A breach of this duty constitutes negligence.

Here, the Hadjihs introduced evidence sufficient for the jury to find that Evenflo knew or should have known before the accident that carriers had sometimes separated from their bases in the Discovery Infant 316 car seat. Evenflo knew that customers had reported 74 incidents in which a Discovery carrier had separated from its base.[2] It also knew that at least one separation had occurred in testing when the car seat had been dropped from a height of three feet. In fact, evidence showed that Evenflo recalled a later model of the Discovery with the same latch mechanism connecting the carrier and base because of the separation hazard. The Hadjihs also introduced evidence that the danger of separation was not obvious to product users. The three Discovery users who testified at trial all said they believed the seat was safe before using it. Finally, the Hadjihs presented evidence that a warning would have been feasible. The Manual contained numerous other warnings, including the "risk" of eating a lollipop while riding in the car seat.

---

[2] The 74 incidents involved both the Discovery 316 model and a later model, the 390/391, but Evenflo offered testimony that the latch connecting the carrier and base on the two models was the same.

In light of the evidence the Hadjihs presented at trial, the district court concluded that, construing the evidence in favor of the plaintiffs, there was a "fairly well-established history of detachments in similar car seats, substantially similar car seats, substantially similar situation and accidents." R. vol. 5, at 1484.

*Second*, plaintiffs introduced evidence that Evenflo breached its duty to warn. It's undisputed that the Hadjihs read the Discovery owner's manual soon after purchasing the car seat and that Evenflo did not provide any warning about the separation hazard.

*Third*, plaintiffs introduced evidence that injury resulted from the breach. Both Hadjih parents testified that if they had been warned about the danger of the Discovery seat separating from its base, they would either have not used the seat at all or, at the very least, not used it with its base. Instead, absent a warning, they secured A.H. in the Discovery seat using the base. The evidence shows that the seat belt held the base to the Jeep's back seat during the crash, while the carrier separated, bounced, and flew into the rear cargo area. Both of the Hadjihs' experts testified that the latch failure caused A.H.'s injuries.

The Hadjihs presented evidence of duty, breach, and resulting injury, but the district court took the failure-to-warn claim away from the jury. In summary fashion, it said, "This is a design case. And it doesn't make any sense for [Evenflo] to warn when they're putting out a product whose very purpose is two-seat configuration to warn people that they had better use a single base for their configuration. That goes against the very nature

of what was being sold, and that isn't what failure-to-warn cases are about. Dismissed."[3] R. vol. 5, at 1481.

We disagree. By design, the Discovery model could be used with or without the "convenience" base. Although we don't share the view that this is dispositive, a warning about the risk of using the two-piece configuration would not necessarily have undermined the purchase or use of the product—it is not a "statement not to use the product at all." Appellee's Br. at 24. Instead, the warning would simply have allowed consumers to decide based on full information when or whether to trade added safety for added convenience.

On appeal, Evenflo argues that the Hadjihs failed to provide evidence of a specific element of a failure-to-warn claim. In particular, Evenflo argues that to establish a failure-to-warn claim, a plaintiff must show that a warning would have made the product safe. Response Br. at 21. Here, it says, a warning would not necessarily have eliminated the risk of separation because consumers could still have used the two-piece configuration when they wanted the added convenience.

It is true that the purpose of a warning is to make the use of a product safe or at least safer. In *Hiigel v. General Motors Corp*., 544 P.2d 983, 988 (Colo. 1975) (internal

---

[3] Perhaps because the district court's statement was so succinct, we have trouble understanding it. It seems to say that if a product's "very purpose" includes a dangerous option, the manufacturer needn't warn, because that's what it intended to sell. The district court offered no clarification in its order denying the Hadjihs' Motion for New Trial. It dealt with the issue in a footnote, saying, "Plaintiffs argue as a second ground for a new trial that the Court improperly directed a verdict on their failure to warn claim. The trial record will speak for itself as to the Court's basis for that decision, and I do not find any cause to expand on the Court's reasoning here." R. vol. 1, at 233.

quotations omitted), the Colorado Supreme Court said, "The warning should be such that if followed would make the product safe for users." And in *Armentrout v. FMC Corp.*, 842 P.2d 175, 181 (Colo. 1992) (internal quotations omitted), the court said, "The purpose of a warning is to ensure that an otherwise dangerous product is used in a reasonably safe manner."

These cases stand for the proposition that where a manufacturer has a duty to warn, the warning must make the use of the product reasonably safe. But *reasonably* safe does not mean free from any danger. Evenflo's reading of Colorado law would allow sellers to keep silent about any latent dangers that cannot be wholly mitigated. Colorado courts have not condoned such a view.

For example, in *Bailey v. Montgomery Ward & Co., Inc.*, 635 P.2d 899, 899–900 (Colo. Ct. App. 1981), a buyer purchased "tube" tires from Montgomery Ward. Montgomery Ward installed the new tires over tubes from the old tires but did not warn the buyer of the danger inherent in that practice. A few months later, the right rear tire of the buyer's car blew out, and the driver was injured. The buyer sued, but the only issue put before the jury was whether Montgomery Ward was negligent in mounting new tires over old tubes, and the jury determined it was not. The trial court refused to instruct the jury on the buyer's theory that negligence could be predicated on Montgomery Ward's failure to warn consumers of the danger inherent in installing new tires over old tubes. The appeals court reversed and remanded for a new trial on that claim, concluding, "[A]n injured user of [a] product may proceed on the theory that the seller has the duty to give

adequate warning of an unreasonable danger not obvious to the user which the seller knows or should know is involved in the use of a product." *Id.* at 900.

By making manufacturers reveal the risks involved in the use of a product, the law enables consumers to make informed decisions about how and when to use a product. This is particularly true in our case where there are two ways to use the Discovery car seat: one way is safer; the other way, more convenient. With full information, the consumer can choose when to opt for safety and when to opt for convenience.

This theory that a product can be rendered reasonably safe by fully advising consumers of risk-reducing options was endorsed by the Colorado Supreme Court in *Camacho v. Honda Motor Co., Ltd.*, 741 P.2d 1240 (Colo. 1987). In *Camacho*, a plaintiff sustained leg injuries in a motorcycle crash. He sued the manufacturer, Honda, alleging that the motorcycle was unreasonably dangerous because the motorcycle was not equipped with "crash bars" that could have protected a rider's legs during a crash. *Id.* at 1241. The trial court granted summary judgment to Honda, but the Colorado Supreme Court reversed.

Addressing Camacho's failure-to-warn claim, the court said, "The purpose of a warning is to ensure that an otherwise dangerous product is used in a reasonably safe manner." *Id.* at 1248. It presumed, without deciding, that "the Honda motorcycle was unreasonably dangerous or was rendered unreasonably dangerous by a failure to warn." *Id.* (emphasis added). Then, it said, "Arguably, a warning that injury-reducing crash bars were available as optional equipment or as add-on equipment would render an otherwise

unreasonably dangerous motorcycle reasonably safe." *Id.* In support of that proposition, the court cited *Wagner v. International Harvester Co.*, 611 F.2d 224, 231 (8th Cir. 1979).

In *Wagner*, the Eighth Circuit concluded that a manufacturer's duty to supply a safe product might have been satisfied if it had offered rollover protection as an option for a crawler tractor that the manufacturer knew could not be used as intended without a risk of rollovers. The court accepted the theory that "the purchaser of multi-use equipment knows best the dangers associated with its particular use, and so it should determine the degree of safety provided. That is to say, the purchaser may be in the best position to make the cost-benefit analysis implicit in the principles of general negligence." *Id.*

Similarly, here, under the Hadjihs' theory of the case, Evenflo knew that using the two-piece configuration presented a risk of separation. In our view, a warning that the one-piece configuration is a safer alternative could render an otherwise unreasonably dangerous product *reasonably* safe. Like the hypothetical warning in *Camacho*, the warning here would not by itself have eliminated any risk present when the base was used. But had Evenflo disclosed its known information about the separation risk, the Hadjihs could have then decided whether to eliminate the risk by using the carrier without the base or by finding a different product. They could have weighed the added risk of using the base against the inconvenience of having to strap in the carrier each time with the seat belt.

The Hadjihs presented sufficient probative evidence on the elements of a failure-to-warn claim to submit it to the jury. They are not required to show that a warning would

necessarily have eliminated all risk inherent in the product. Thus, the district court erred in directing a verdict on the failure-to-warn claim.

Evenflo argues that even if the district court erred, the error was harmless because the jury found in favor of Evenflo on the design-defect claim. As mentioned, we fail to see how one follows the other. A jury might find that a product does not have a design defect but that it still needs appropriate warnings to make it reasonably safe. For example, the court in *Vista Resorts, Inc. v. Goodyear Tire & Rubber Co.*, 117 P.3d 60, 71 (Colo. App. 2004), found that the jury was properly instructed that "[a] product not otherwise defective in its manufacture or design becomes defective and unreasonably dangerous if adequate warnings or instructions for use are not provided." *See also Anderson v. Heron Eng'g Co.*, 604 P.2d 674, 676 (Colo. 1979) ("[A] product which is free of manufacturing and design defects nonetheless may be defective and unreasonably dangerous if not accompanied by adequate instructions and warnings."). Here, the jury could have found that the separation risk did not constitute a design defect but that the separation risk did create a duty to warn.

## 2. Was Kiser unavailable to testify?

The district court admitted the videotaped deposition of Randolph Kiser, an expert witness, over the objection of the plaintiffs. After trial, the plaintiffs moved for a new trial in part based on the videotaped deposition. The court reaffirmed its earlier ruling that the admission was proper because Kiser was "unavailable" as defined by Rule 32(a)(4) of

the Federal Rules of Civil Procedure. The Hadjihs challenge both the decision at trial and the denial of their motion for new trial.

We review the district court's decision allowing the deposition testimony of an "unavailable witness" for abuse of discretion, and we examine de novo the district court's interpretation of the federal rules. *Garcia-Martinez v. City and County of Denver*, 392 F.3d 1187, 1190 (10th Cir. 2004). We review the court's denial of a rule 59(a) motion for abuse of discretion as well. *Elm Ridge Exploration Co. v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013).

Deposition testimony is normally inadmissible hearsay, but Federal Rule of Civil Procedure 32 creates an exception. *Angelo v. Armstrong World Indus.*, 11 F.3d 957, 962–63 (10th Cir. 1993). Rule 32(a)(4) provides:

> (4) Unavailable Witness. A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds:
> . . .
> (B) that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition.

It is undisputed that Kiser was more than 100 miles from the Denver courthouse. He lives and works in Georgia. The key inquiry, then, is whether "it appear[ed] that the witness's absence was procured by the party offering the deposition." Rule 32(a)(4)(B). The trial court found that Kiser's "absence was not procured by Evenflo. He moved to Georgia when he took a job there." R. vol. 1, at 249. The Hadjihs argue that the court erred because the "appearance of procurement" existed and the court admitted the deposition even though Evenflo did not rebut it. Reply Br. at 22.

The Hadjihs argument is based on the concern that the district court expressed at trial about Evenflo's claim that Kiser was unavailable to testify live. Counsel for Evenflo represented that Kiser "no longer works with" Evenflo. R. vol. 5, at 1484. The court then asked if Evenflo could get him to court, and it said it wanted an "honest, candid answer." R. vol. 5, at 1485. Evenflo's counsel said he would "ask him if I can get him here . . . I don't control him. I can tell you tomorrow, but I have the video ready to go." R. vol. 5, at 1485–86. The court then got Kiser's phone number and had the courtroom deputy call. There was no answer. *Id.* at 1491. The defense began its case, and then later in the day the court allowed the videotaped deposition to be played for the jury. *Id.* at 1554.[4] The next morning the court asked again, "What's the story with Mr. Kiser?" *Id.* at 1567. Defense counsel represented that he had spoken to Kiser and that he could not travel to testify because he was working with a competitor.

After trial, the Hadjihs moved for a new trial in part based on the videotaped deposition. In its order, the court provided an extensive accounting of the relevant facts and dates. The court found that "notwithstanding Mr. Kiser's change of employment from Evenflo to an Evenflo competitor, Mr. Kiser remained willing to cooperate with Evenflo and its counsel in the present case. . . I am satisfied that Evenflo could have called him as a live witness had it wished to." R. vol. 1, at 245. The court also found "that the scenario as it played out from Mr. Kiser's departure to the conclusion of the trial was

---

[4] The substance of Kiser's testimony addressed why Evenflo decided to recall the Discovery 390/391 model and why Discovery 316 was not recalled.

substantially driven by strategic and tactical considerations." *Id.* at 246. But, the court

found there was strategizing by the plaintiffs as well:

> [W]hen plaintiffs' counsel were informed of Evenflo's decision not to call Mr. Kiser as a live witness, their initial reaction was not to object but instead to set about the task of exchanging or re-exchanging with Evenflo's counsel designations of portions of the deposition that they wished to have presented. They did not express any objection until Tuesday, the start of the second trial week. I infer that there was some strategizing occurring on their side as well.

*Id.* at 247. The court concluded that Kiser was unavailable as defined by Rule 32(a)(4):

> It is undisputed that Mr. Kiser was more than 100 miles from this courthouse. He lives and works in Georgia, and there has been no suggestion that he was within 100 miles of Denver during the second week of this trial. His absence was not procured by Evenflo. He moved to Georgia when he took a job there after leaving Evenflo (which is headquartered in Ohio) in July 2012.

*Id.* at 249.

The Hadjihs argue that the district court abused its discretion when it allowed the

videotaped deposition to be played because it did not know if Kiser was truly an

"unavailable witness" under Rule 32(a)(4). It suggests that the court's repeated inquiries

demonstrate that it had concerns that Kiser's absence may have been procured by

Evenflo.

The Hadjihs' argument fails because, as the district court recognized, there is a

difference between procuring a witness's absence and electing not to procure his

attendance.[5] *See* 8A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 2146 n. 12 (3d ed. 2013).

In *Carey v. Bahama Cruise Lines*, 864 F.2d 201, 204 (1st Cir. 1988), the First Circuit considered a similar argument. In that case, it was undisputed that the witnesses in question were more than 100 miles from the place of trial, but the plaintiffs argued that the absence of the witnesses was procured by the defendant. The court rejected that argument because the plaintiffs offered no evidence to support their allegation that the defendant "actively took steps to keep the deponents from setting foot in the courtroom. Under the case law interpreting Rule 32, the mere fact that the deponents are employed by the defendant and that there is an identity of interest between the deponents and their employer is not enough to trigger exclusion because procuring absence and doing nothing to facilitate presence are quite different things." 864 F.2d at 204.

The Hadjihs rely on *Fairfield v. Dwek*, 970 F.2d 990, 995 (1st Cir. 1992), where the First Circuit affirmed the refusal to admit a deposition under Rule 32(a)(4), based partly on a finding that a party had failed to explain why he could not appear. But that case is not on point because there the appellate court simply said it was not an abuse of discretion for the district court to *refuse* to admit the deposition. Here, by contrast, the Hadjihs are asking us to find it was an abuse of discretion for the district court to admit the deposition.

---

[5] As the district court said, "[E]ven assuming that Evenflo in fact could have procured his presence, there is a difference between procuring an otherwise available witness' absence to avoid his appearance and electing not to procure the attendance of a witness who is not within the 100-mile radius." R. vol. 1, at 249.

The Hadjihs also argue that the district court made an error of law when it did not give the word "appears" its full weight as used in Rule 32(a)(4)(B). The Hadjihs argue that the record shows that it appeared to the district court that the witness's absence was procured, so Kiser should not have been considered an unavailable witness. But, even if we were to give "appears" the emphasis the Hadjihs want, the record shows only that the district court suspected that Evenflo could procure Kiser's live testimony had it wanted to, not that it affirmatively procured his absence.

In sum, both during and after trial, the district court carefully considered whether Evenflo should have been allowed to present the Kiser deposition to the jury. In the district court's judgment, it did not appear that Evenflo had affirmatively procured Kiser's absence and both sides agreed he was more than 100 miles away. Thus, Kiser was "unavailable" under Rule 32(a)(4)(B). We cannot say that ruling was an abuse of discretion.

## CONCLUSION

For the reasons discussed above, we affirm the district court's decision to allow the videotaped deposition of Kiser to be played for the jury, but we reverse and remand for a new trial on the merits of the Hadjihs' failure-to-warn claim.


ENTERED FOR THE COURT


Gregory A. Phillips
Circuit Judge

- 15 -