**Leslie Russel RAMSEYER**

v.

**GENERAL MOTORS CORPORATION, a Corporation and United States of America, Appellees,**

**James L. Spellman, Administrator of the Estate of Leslie R. Ramseyer, Deceased, Appellant.**

**No. 19511.**

United States Court of Appeals
Eighth Circuit.

Oct. 29, 1969.

Warren C. Schrempp of Schrempp, Rosenthal, McLane & Bruckner, Omaha, Neb., for appellant; James E. Schneider, North Platte, Neb., on the brief.

Joseph R. Moore, Omaha, Neb., for appellee General Motors Corp.; Harry B. Otis, Omaha, Neb., on the brief.

Before VOGEL, GIBSON and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

Leslie Russel Ramseyer sustained injuries while a passenger in his 1963 Chevrolet Corvair automobile when the vehicle overturned on a Nebraska highway. Ramseyer sought recovery from General Motors, the Corvair's manufacturer. He here appeals from a judgment of dismissal entered on adverse jury findings. We have jurisdiction through diversity of citizenship and the requisite amount in controversy. On our review, we feel that Ramseyer received a fair trial, one without prejudicial error and that the judgment of dismissal must stand.

The one-car accident occurred on October 23, 1964, when Ramseyer, who was then asleep, and the driver, Carl E. Von-Hubright, a hitchhiker picked up by Ramseyer that morning, were traveling west on paved U.S. Highway No. 30 near Maxwell, Nebraska. Another motorist also driving west testified that the Corvair, traveling about fifty-five miles per hour, passed him, reentered its own lane of traffic, but then continued directly into the north ditch and overturned.

Von-Hubright testified that after passing a pickup truck, he steered the Corvair to the right until it entered the right-hand lane. Thereafter, he attempted to straighten the Corvair's course by turning the steering wheel to the left, but the front wheels failed to respond and the Corvair entered the right ditch.

The record also presented the usual conflict of expert testimony: plaintiff's witnesses contended that mechanical failure of the steering gear caused the accident; defendant's contended that the defect in the mechanism occurred on impact, not before. Appellant testified that

he had purchased the Corvair as a used car one week before the accident. The automobile had been tuned, the steering checked and it appeared to be in satisfactory working order.

On trial, Ramseyer sought to hold the manufacturer liable on theories of negligence and breach of warranty. The court submitted the issues of fact in the form of questions to be answered by the jury as its special verdict. The jury found:

(1) General Motors breached no implied warranties of merchantability, quality or fitness for purpose, nor was it negligent;

(2) the owner retained a right of control over the driver, Von-Hubright;

(3) Von-Hubright was guilty of negligence which contributed "100 per cent" as a cause of the accident.

Post-verdict, the trial court denied Ramseyer a new trial. He seeks reversal and claims that the trial court erred: (a) in failing to specifically instruct that a breach of warranty could be established without proof of negligence; (b) in failing to determine as a matter of law that appellant rode as a guest in his automobile at the time of the accident and, thus, the driver's negligence could not be imputed to him; (c) in permitting the jury to consider testimony that Von-Hubright had been treated at a mental hospital for a nervous breakdown about eight years prior to this accident; (d) in permitting an appellee's expert witness to testify to results of wear test experiments performed on similar Corvair steering gears. We consider the appellant's claims in the order in which we have stated them.

*WARRANTY INSTRUCTION*

The trial judge specially instructed the jury that plaintiff sought recovery on two separate theories, breach of warranty and negligence, and separately

submitted questions pertinent to each theory.[1]

■ Though the trial judge did not specifically state that the plaintiff could establish breach of warranty without proof of negligence, he adequately guided the jury. Had plaintiff desired more explicit instructions, he should have called the court's attention to any alleged omissions pursuant to Rule 51, Fed.R.Civ.P. He failed to do so. Appellant has here demonstrated no reversible error in the warranty instructions.

*IMPUTED NEGLIGENCE*

■ The plaintiff-appellant argues that the trial court erred in submitting elements of imputed negligence, the owner's right of control of the driver and the driver's own negligence to the jury. That submission becomes immaterial in the light of the jury's response to other questions that the defendant was neither guilty of negligence nor breach of warranty. Contributory negligence, as a bar to plaintiff's recovery, becomes relevant only if plaintiff has first established initial negligence on the part of General Motors. The jury here found the manufacturer free of negligence. Accordingly, the jury's finding that Ramseyer retained the right to control the operation of the vehicle and that the driver negligently operated the car were of no consequence to the judgment entered in this case. See, Lowe v. Taylor Steel Products Co., 373 F.2d 65, 68 (8th Cir.), cert. denied, 389 U.S. 858, 88 S.Ct. 85, 19 L.Ed.2d 122

---

1. The following illustrates the manner in which the trial court harmonized his instructions and appendant questions submitted to the jury:

"As you will have noted in the summary of the complaint, the plaintiff is seeking recovery here on two legal theories. These two basis are separate and distinct and the questions and your answers to them should be considered separately. The first legal theory upon which plaintiff seeks recovery is on the basis of breach of implied warranty.

You are instructed that one of the elements of a sale of an automobile may be an affirmation of fact or promise by the seller that the automobile possesses certain characteristics.

Such an affirmation of fact or promise is called a warranty. It may be made expressly in so many words by the seller, or it may be implied from the circumstances of the sale.

You are instructed that the manufacturer of an automobile impliedly warrants to the ultimate consumer that its product is of merchantable quality and is reasonably fit for the purpose intended. This warranty does not necessarily arise from an agreement between the parties, rather it is a duty placed upon the manufacturer by force of law. The manufacturer's obligation to the consumer is that the article delivered will be of the same quality, material, and workmanship as products generally sold for such purpose. The designer and manufacturer also warrants to the consumer that the product is reasonably fit for the normal purposes for which it was intended. However, the manufacturer is not an insurer of its product.

If you should find that the design or manufacture of the steering gear assembly involved in this case was not reasonably safe for use for normal use, then you may consider such fact as evidence of breach of the implied warranties of merchantability and fitness.

The first two questions which will be submitted to you are as follows:

(1) DO YOU FIND FROM A PREPONDERANCE OF THE EVIDENCE THAT THE DEFENDANT BREACHED ITS IMPLIED WARRANTY THAT THE STEERING GEAR ASSEMBLY WAS OF MERCHANTABLE QUALITY AND REASONABLY FIT FOR THE PURPOSE INTENDED?

ANSWER ......................

If your answer to question No. 1 is 'NO' then you need not answer question No. 2.

(2) DO YOU FIND FROM A PREPONDERANCE OF THE EVIDENCE THAT THE DEFENDANT'S BREACH OF WARRANTY WAS EITHER THE SOLE PROXIMATE CAUSE OR A CONTRIBUTING PROXIMATE CAUSE OF THE PLAINTIFF'S INJURY?

ANSWER ......................"

The trial court handled the negligence issue and questions relevant to that issue similarly

(1967); Cities Service Oil Co. v. Harvey, 148 F.2d 780, 783 (10th Cir. 1945).

■ On this issue, the appellant also argues that the jury, realizing that the hitchhiker's negligence barred plaintiff's recovery, gave little consideration to the key issue of warranty. We are unconvinced by this argument. Nothing in the record indicates that the jury failed to discharge its proper responsibility of giving fair consideration to each issue submitted to it. Indeed, the jury, during its deliberations, requested additional instructions from the court on the "present worth" of plaintiff's future loss, as called for by the damage issue contained in the final question of the special verdict. At least, in this instance, the jury indicated meticulous concern about answering a question which proved immaterial in the light of its answers to the preceding questions. We do not infer that the jury failed to give the same type of consideration to the other questions.

*EVIDENTIARY MATTERS*

The driver's testimony, crucial to the plaintiff's case, came in by way of deposition. On cross-examination of the driver, counsel for General Motors developed evidence that Von-Hubright had been treated for a nervous breakdown in a mental institution for about three months in 1955 and again for the same period of time in 1956.

■ It is generally accepted that the permissible scope of cross-examination to test the accuracy or credibility of a witness rests with the trial judge and his rulings will not be disturbed except for clear abuse of discretion. See, *e. g.*, Grain Dealers Mut. Ins. Co. v. Farmers Union Co-op Elevator & Shipping Ass'n, 377 F.2d 672 (10th Cir. 1967); Lewis v. United States, 373 F.2d 576 (9th Cir.), cert. denied, 389 U.S. 880, 88 S.Ct. 116, 19 L.Ed.2d 173 (1967); Marteney v. United States, 218 F.2d 258 (10th Cir. 1954), cert. denied, 348 U.S. 953, 75 S.Ct. 442, 99 L.Ed. 745 (1955); Erving v. State, 174 Neb. 90, 116 N.W.2d 7 (1962); Washington v. State, 160 Neb. 385, 70 N.W.2d 378 (1955). The courts, particularly those in the federal system, recognize that a witness' previous mental incapacity serves as a proper subject for cross-examination to determine credibility. See, United States v. Allegretti, 340 F.2d 254 (7th Cir. 1964), cert. denied, 381 U.S. 911, 85 S.Ct. 1531, 14 L.Ed.2d 433 (1965); *cf.*, United States v. Mucherino, 311 F.2d 172 (4th Cir. 1962).

■ As we read the pertinent part of the record reproduced below,[2] plain-

2. "Q. Mr. Von-Hubright, have you ever spent any time in a mental institution?
Mr. Schrempp: Objected to as no proper foundation laid as having anything to do with the happening of this accident.
By the Court: Will you reread the question?
Mr. Moore: Mr. Von-Hubright, have you ever spent any time in a mental institution?
By the Court: Overruled. He may answer.
Mr. Moore: Anwser: Yes.
Q. When and where were you in a mental institution?
By the Court: The only thing that it could possibly bear upon would be credibility or competency.
Mr. Schrempp: We will withdraw our objection to it.
Mr. Moore: Answer: Oh. Well, 1955 I was in for approximately six months.
Q. Where?

A. In Toledo, Ohio.
Q. Where?
A. Toledo, Ohio.
Q. Were you in only once?
A. No. Twice. Six months all together. Three months at a time.
Q. When was the second time?
A. I'd have to guess. About '56. I believe it was the next year after—yes, the next year.
Q. Was there some event that led to your being placed in a mental institution?
A. Yeah.
Mr. Schrempp: Now there will be an objection to all of the testimony on cross-examination from the top of page 34, and the following four pages, as being improper cross-examination and not tending to prove or disprove any issues in this case.
By the Court: The objection will be overruled.

tiff conceded that testimony relating to hospitalization might bear on "credibility" and pressed his objection only to the question calling for the cause of hospitalization. The latter question and answer appropriately served to clarify Von-Hubright's prior testimony and fell within the latitude possessed by the trial judge to control the course of the trial proceedings. We cannot say that the trial court abused its discretion by admitting such testimony.

In submitting his conclusion on the issue of whether or not the steering assembly failed before or after the accident, plaintiff's expert witness suggested that softer than usual metal in the steering sector worm gear of Ramseyer's Corvair precipitated the mechanical failure of the steering assembly and the accident. Countering, a defendant's expert produced similar gears of reduced hardness on which the witness had performed laboratory tests which simulated 100,000 miles of ordinary driving wear against the parts. Those gears, as exhibited to the jury, showed only normal wear. The witness admitted that the tests had not simulated driving over chockholes and severe washboard roads and that the parts had not been subjected to the shock such driving entails. Accordingly, the appellant objected to the admission of the tested parts on the ground that the tests had not simulated true driving conditions.

■■ Admissibility of evidence depends upon a foundational showing of substantial similarity between the tests conducted and actual conditions. See, Skogen v. Dow Chemical Co., 375 F.2d 692, 704 (8th Cir. 1967); Gillam v. J. C. Penney Co., 341 F.2d 457, 460 (7th Cir. 1965); Larson v. Meyer, 161 N.W. 2d 165 (N.D.1968); Crecelius v. Gamble-Skogmo, Inc., 144 Neb. 394, 397, 13

N.W.2d 627 (1944). Perfect identity between experimental and actual conditions is neither attainable nor required. Lobel v. American Airlines, 205 F.2d 927, 931 (2d Cir. 1953). Dissimilarities effect the weight of the evidence, not admissibility. See, Lever Bros. Co. v. Atlas Assur. Co., 131 F.2d 770 (7th Cir. 1942). Finally, the decision whether to admit or exclude evidence of experiments in a particular case rests largely in the discretion of the trial judge and his decision will not be overturned on appeal absent a clear showing of an abuse of discretion. See, e. g., Skogen v. Dow Chemical Co., supra; Ripp v. Riesland, 180 Neb. 205, 141 N.W.2d 840 (1966); Reizenstein v. State, 165 Neb. 865, 87 N.W.2d 560 (1958); Crecelius v. Gamble-Skogmo, Inc., supra.

■ In the instant case, we note substantial similarity in the gear taken from Ramseyer's Corvair and the kinds of gears tested, in the hardness of the gears and, generally, in the wear factors applied in the experiments as compared to the normal driving wear in the life of an automobile.[3] In addition, the court cautioned the jury that the tested steering gears admitted as exhibits should be considered in connection with testimony describing the experiments and that all evidence should be weighed including that elicited by plaintiff as a basis for objecting to the admissibility of the gears. That evidence emphasized that a gear in a vehicle might be subject to stress greater than that produced by testing procedures. The trial court properly permitted the jury to consider the evidence of the experiments on the Corvair parts for whatever worth it had.

We find no prejudicial error committed by the trial court. Accordingly, we affirm the judgment.

Mr. Moore: The answer appears on page 34 line 5:
A. I had a nervous breakdown.
Mr. Schrempp: May I interpose a special objection to the remaining portion of that answer, Your Honor?
By the Court: Sustained.

Mr. Moore: That knocks out the next two questions.
Mr. Schrempp: Yes."

3. The Ramseyer Corvair showed 50,000 miles on the speedometer.