Edward C. McINTYRE et ux.,
Appellants/Cross-Appellees,

v.

EVEREST & JENNINGS, INC., etc.,
Appellee/Cross-Appellant.

Nos. 77–1198 and 77–1244.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 15, 1977.

Decided Feb. 13, 1978.

Rehearing and Rehearing En Banc
Denied April 25, 1978.

On Reconsideration of Denial of Rehearing
and Rehearing En Banc May 16, 1978.

As Modified Aug. 14, 1978.

**156**

William H. Pickett, Pickett & Midkiff, Kansas City, Mo., for McIntyre, et al.

Paul H. Niewald, Niewald, Risjord & Waldeck, Kansas City, Mo., for Everest & Jennings, Inc.

Before BRIGHT and ROSS, Circuit Judges, and HARPER, Senior District Judge.*

HARPER, Senior District Judge.

Plaintiff, Edward McIntyre, brought this products liability action for compensatory and punitive damages, suing under theories of strict liability and negligence. His wife, Connie McIntyre, joined in this suit seeking damages under the same theories for the loss of consortium with her husband.

This suit was tried before a jury in the United States District Court for the Western District of Missouri, Judge Collinson presiding. A jury verdict was returned in favor of the defendant on the issue of strict liability. With respect to the question of negligence, the jury found in favor of the plaintiffs. Edward McIntyre was awarded $15,000.00, and his wife $5,000.00, as compensatory damages for their injuries. Additionally, the jury awarded $45,000.00 to Edward McIntyre (hereinafter the term plaintiff refers solely to Edward McIntyre) as punitive damages.

Thereafter, the defendant made a motion for a judgment in accordance with its motion for a directed verdict. The defendant's motion was sustained by the trial court with respect to the award of punitive damages, but was denied as to the compensatory damages. The plaintiff appeals from the trial court's order vacating the award of punitive damages. The defendant cross-appeals the trial court's refusal to set aside the verdicts with respect to the compensatory damages.

The plaintiff is a paraplegic, having received a spinal cord injury at the T-3, T-4 level in June of 1968. McIntyre is paralyzed from the nipple line of the chest on down. After receiving rehabilitation training at the University of Kansas Medical Center, McIntyre obtained an over-the-toilet commode chair from the defendant.

The defendant, Everest & Jennings, Inc., is the manufacturer of the commode chair involved herein. The particular commode in question was originally designed in 1941 and has been in production since then. The commode itself is quite simple in design and

---

* The Honorable Roy W. Harper, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

function, consisting primarily of a chair on caster wheels. Caster locks were available on this particular commode, however the plaintiff chose not to purchase them.

On July 5, 1970, while sitting in the commode chair, plaintiff dropped his toothbrush in the lavatory before him. While bending down to pick up the toothbrush, the plaintiff leaned forward in the chair to a point where the back wheels of the commode came off the bathroom floor and the front wheels moved backward. This action caused McIntyre to be thrown forward out of the commode and resulted in the injuries involved herein.

The defendant asserts on appeal that the evidence and verdict of the jury establish as a matter of law that the defendant was not negligent. At the outset an apparent inconsistency exists in the special verdicts submitted to the jury. In its verdicts the jury found in favor of the defendant on the theory of strict liability, finding no defect in the commode chair. However, on the issue of negligence, the jury found in favor of the plaintiffs.

█ Special answers or findings by the jury must be consistent with each other. If they are irreconcilably inconsistent, they destroy each other. It is, however, the duty of the courts to make every reasonable effort to harmonize the answers. *Gallick v. Baltimore & Ohio R. Co.*, 372 U.S. 108, 119, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963); *Ludwig v. Marion Laboratories, Inc.*, 465 F.2d 114, 118 (8th Cir. 1972); *Stockton v. Altman*, 432 F.2d 946 (5th Cir.), *cert. denied*, 401 U.S. 994, 91 S.Ct. 1232, 28 L.Ed.2d 532 (1971).

This case was submitted to the jury under the general rule of strict liability in tort as stated in Restatement (Second) of Torts § 402A. That rule has been adopted in Missouri. *Keener v. Dayton Electric Manufacturing Co.*, 445 S.W.2d 362, 364 (Mo. 1969). It provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

The jury herein found that the portable commode chair was not in a defective condition unreasonably dangerous to the consumer. The jury verdict was clearly predicated on the lack of a defective condition in the commode, inasmuch as the other elements to this cause of action, that the defendant was engaged in the business of selling portable commodes, and that the commode reached the consumer without substantial change, were admitted by the defendant.

As to the negligence count, the case was submitted to the jury under four theories: First, that the commode was unstable by reason of negligent design; second, that the defendant failed to perform tests of the commode's stability characteristics; third, that the defendant failed to warn that the commode would tip; and fourth, that the defendant failed to instruct the user of the risk of tipping if the user leaned forward.

█ Generally, in order to recover under either negligence or strict liability it is necessary to prove that a defect existed in the product at the time the manufacturer parted with possession. *Lindsay v. McDonnell Douglas Aircraft Corp.*, 460 F.2d 631, 636 (8th Cir. 1972). A verdict in favor of the defendant-manufacturer on the issue of strict liability, finding no defect in the product, would in some jurisdictions preclude recovery under the theory of negligence. In *Browder v. Pettigrew*, 541 S.W.2d 402, 404 (Tenn.1976), the court stated:

We agree with counsel that in a products liability action in which recover is sought under the theory of negligence, the plaintiff must establish the existence of a defect in the product just as he does in an action where recovery is sought under the strict liability theory or for breach of warranty, either express or implied. The only significant difference is

that under the negligence theory the plaintiff has the additional burden of proving that the defective condition of the product was the result of negligence in the manufacturing process or that the manufacturer or seller knew or should have known of the defective condition.

. . . [W]hile proof of a malfunction alone should be sufficient under the strict liability and warranty theories in a products liability case, a higher standard of specificity of proof of defect is required in order to recover under the negligence theory. (citations omitted.)

However, in *Hasson v. Ford Motor Co.*, 19 Cal.3d 530, 138 Cal.Rptr. 705, 564 P.2d 857 (1977), the California Supreme Court reached a contrary conclusion. Therein the court held that recovery under a negligence theory is possible where there was no finding of strict liability. Particular emphasis was placed by the California court on the submission of negligence and strict liability counts to the jury as independent theories, without an instruction to the effect that a failure to find a defect under strict liability necessarily precluded all liability on the defendant's part. *Hasson v. Ford Motor, supra*, 138 Cal.Rptr. at 712, 564 P.2d 857.

The courts of Missouri, the forum state in this diversity action, have not decided this issue. While we are required to apply state law in diversity cases, we are not bound to predict state law developments when it is not necessary to do so. *Edwards v. Sears, Roebuck & Company*, 512 F.2d 276, 291 (5th Cir. 1975). We decline to establish a rule on this issue, but rather we hold only that insufficient evidence exists to support a verdict in favor of the plaintiffs on the issue of negligence.

In determining the sufficiency of the evidence, the issue is raised as to whether the state or the federal test of sufficiency of evidence to support a jury verdict should govern in a diversity action in federal court. The Supreme Court has declined to resolve this issue. *Dick v. New York Life Ins. Co.*, 359 U.S. 437, 444–45, 79 S.Ct. 921, 3 L.Ed.2d 935 (1959). This court has, however, held in prior diversity cases that where state and federal tests for sufficiency of the evidence are similar and neither party has raised the issue, we hold the state standard to be applicable. *Harwell v. Westchester Fire Ins. Co.*, 508 F.2d 1245, 1247 (8th Cir.), *cert. denied*, 421 U.S. 949, 95 S.Ct. 1681, 44 L.Ed.2d 102 (1975); *Gisriel v. Uniroyal, Inc.*, 517 F.2d 699, 701 n. 6 (8th Cir. 1971). Both parties have argued the case on the basis that Missouri law applied. Missouri state standards for testing the sufficiency of evidence are substantially the same as federal standards. *Meitz v. Garrison*, 413 F.2d 895, 896 (8th Cir. 1969); *Lewis v. Nelson*, 277 F.2d 207, 210 (8th Cir. 1960).

Review of a trial court's denial of a motion for judgment notwithstanding the verdict is severely limited. In *Griggs v. Firestone Tire & Rubber Co.*, 513 F.2d 851, 857 (8th Cir.), *cert. denied*, 423 U.S. 865, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975), *citing Hanson v. Ford Motor Co.*, 278 F.2d 586, 596 (8th Cir. 1960), we held that, in passing upon a motion for judgment n. o. v., the trial court and the appellate court are:

(1) to consider the evidence in the light most favorable to the * * * parties prevailing with the jury; (2) to assume that all conflicts in the evidence were resolved * * * in favor of the [prevailing parties]; (3) to assume as proved all facts which [the prevailing parties'] evidence tends to prove; (4) to give the [prevailing parties] the benefit of all favorable inferences which may reasonably be drawn from the facts proved; and (5) to deny the motion if, reviewing the evidence in this light, reasonable men could differ as to the conclusion to be drawn from it.

■ An appellate court may not substitute its view of the facts for that of the trier of fact unless it is in a position to hold that reasonable minds, viewing the evidence in the light most favorable to the prevailing party, could only have found otherwise than the trier of fact. *Russ v. Ratliff*, 538 F.2d 799, 804 (8th Cir. 1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977).

The jury's finding in favor of the defendant on the issue of strict liability precludes a finding of negligent design of an unstable commode or a negligent failure to perform tests of the commode's stability characteristics in this particular case. The only basis upon which the jury's verdict could lie is either in a failure to warn or instruct on the commode's propensity to tip when the user leaned forward.[1]

With respect to a manufacturer's duty to warn, Missouri has adopted the rule stated in Restatement (Second) of Torts § 388 (1965). *Griggs v. Firestone Tire and Rubber Co., supra* at 856; *Morris v. Shell Oil Co.*, 467 S.W.2d 39, 42 (Mo.1971). It provides:

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Even assuming that the commode can be characterized as "dangerous for the use for which it is supplied," manufacturer's liability here is not proper. "The law does not impose upon manufacturers any duty to warn of many common dangers, for no one needs notice of what he knows or reasonably may be expected to know." *LaPlant v. E. I. DuPont De Nemours & Co.*, 346 S.W.2d 231, 245 (Mo.App.1961).

In *Kerber v. American Machine & Foundry Co.*, 300 F.Supp. 1205, 1206 (W.D.Mo.),

*aff'd*, 411 F.2d 419 (8th Cir. 1969), the trial court stated:

We believe that the case of *Stevens v. Durbin-Durco*, 377 S.W.2d 343, 346–348 (Mo.1964) correctly states the applicable rule of law:

"The manufacturer of a product which is potentially dangerous when applied to its intended use (citing cases) or reasonably certain to place life and limb in peril when negligently made (citing cases) is under a duty to a remote user to exercise ordinary care in its manufacture, and is liable to a remote user injured thereby if the injury results from a latent defect bespeaking lack of ordinary care in making the product."

\* \* \* \* \* \*

"[W]here the danger is open, obvious and apparent, or the user has actual knowledge of the defect or danger, there is no liability on the manufacturer." Under that rule, we do not believe that reasonable men could differ in finding that the danger was not latent or concealed, but on the contrary, it was open, obvious and apparent to all who used it, particularly the plaintiff who had—by his own admission—actual knowledge of the danger and an awareness that he could be hurt if he stuck his hand in the uncovered opening.

In *Coleman v. Buehner*, 444 S.W.2d 16, 22 (Mo.App.1969), the court stated:

Defendant could not be found negligent in failing to warn plaintiff of facts of which he had full knowledge. There is no duty to warn a person on the premises of dangers which are known, or are as well known to such person as to the owner or occupant, or which are obvious, or should have been observed by such person in the exercise of ordinary care.

Plaintiff was also guilty of contributory negligence as a matter of law for the reason that he intentionally exposed himself to a known and appreciated danger. (citations omitted.)

---

1. We have recognized in different circumstances that a jury's rejection of plaintiff's strict liability theory premised on a design defect need not be inconsistent with a finding of negligence. *See Sterner v. U. S. Plywood-Champion Paper, Inc.*, 519 F.2d 1352, 1354–55 (8th Cir. 1975).

The plaintiff herein was fully aware of any danger involved in the use of the commode. It is common knowledge that any chair, including a chair with casters, will tip if the seated person leans too far forward. Further, it is well known that chairs with casters will tip more readily with the casters in a trail position than with the casters in the forward position. In testimony before the trial court, the plaintiff acknowledged that as a part of growing up he was aware that if a person leans too far forward in a castered chair it will tip and the occupant will fall out.

The evidence in this case established that the plaintiff received training in the use of a commode with casters, similar to the one at issue, during his rehabilitation training at the University of Kansas Medical Center. McIntyre also received training in body balance and the limitations of movement due to physical disability. The plaintiff was specifically instructed not to lean forward in a chair because of the hazard of falling. Additionally, McIntyre was provided with, and trained in the use of reaching tongs to allow him to pick up objects without leaning forward.

When the plaintiff acquired the commode involved herein, he elected not to obtain caster locks because he was trained at the medical center to transfer to a commode that did not have caster locks. Thereafter, the plaintiff used this commode daily or every other day for a period of sixteen months prior to his fall without incident. This court concludes that the risk of tipping in the commode chair was known, obvious, and apparent to the plaintiff.

The plaintiff also seeks to reinstate the jury verdict awarding punitive damages against the defendant. The plaintiff's assertion in this regard raises a novel question under Missouri law as to whether punitive damages are available in product liability actions.

■ This court declines to reach this issue because the evidence herein was insufficient to warrant any recovery. In Missouri the plaintiff's inability to make a meritorious case for compensatory damages necessarily precludes recovery of punitive dam-

ages. *Porterfield v. Burger King Corp.*, 540 F.2d 398, 403 (8th Cir. 1976); *Decker-Ruhl Ford Sales, Inc. v. Ford Motor Credit Co.*, 523 F.2d 833, 836 (8th Cir. 1975); *Koenig v. Skaggs*, 400 S.W.2d 63, 68 (Mo.1966).

For the reasons stated above, the district court's order denying recovery of punitive damages is affirmed. The district court's order permitting recovery of compensatory damages is reversed, and the case is remanded with directions to enter judgment in this case in favor of the defendant, Everest & Jennings, Inc., with each party to bear its own costs on appeal.