**Vera RANDALL, Appellant,**

v.

**WARNACO, INC., HIRSCH–WEIS DIVISION, Appellee.**

**No. 81–1040.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 14, 1982.

Decided May 10, 1982.

Rehearing and Rehearing En Banc Denied June 2, 1982.

Fredric A. Swartz, Edward M. Swartz, Alan L. Cantor, Swartz & Swartz, Boston, Mass., Shelley J. Lashkowitz, Fargo, N. D., for appellant.

James M. Samples, Robert L. Collins, Faegre & Benson, Minneapolis, Minn., Armond G. Erickson, Tenneson, Serkland, Lundberg, Erickson & Marcil, Ltd., Fargo, N. D., for defendant-appellee Warnaco, Inc., Hirch-Weis Division.

Before BRIGHT and ROSS, Circuit Judges, and LARSON, Senior District Judge.[*]

BRIGHT, Circuit Judge.

Vera Randall brought this products liability action against Warnaco, Inc., Hirsch-Weis Division (Warnaco) to recover damages for injuries she sustained when a fire broke out in a tent manufactured by Warnaco. Warnaco in turn filed a third-party complaint seeking contribution and indemnity against Larry Sakellson, the owner of the tent and Randall's camping companion. The district court directed a verdict for Warnaco on Randall's negligence theory and submitted the case to the jury only on the issue of strict liability. On a special verdict form, the jury found in favor of Warnaco on Randall's strict liability theory.

The district court entered judgment on the verdict, dismissing Randall's complaint and the third-party complaint against Sakellson. Following denial of her motion for a new trial, Randall brought this appeal from the adverse judgment.

On appeal, Randall argues that the district court improperly dismissed her negligence claim, incorrectly instructed the jury on strict liability, and made several erroneous evidentiary rulings. We determine that the court should have submitted Randall's negligence theory to the jury, because that theory of recovery contained elements separate from her strict liability theory. Accordingly, we remand this case for a new trial on the issue of negligence, but affirm the judgment of the district court in all other respects.

I.  *Background.*

Vera Randall sustained serious burns on November 13, 1975, when she and Larry Sakellson camped in the Bitterroot National Forest in Montana. At the time, Sakellson and Randall were using a Caravan-model tent manufactured by Warnaco's Hirsch-Weis Division and purchased by Sakellson from a retail store in Fargo, North Dakota. Sakellson modified the tent to accommodate a wood-burning stove he had built from sheet metal. The stove consisted of a rectangular metal box mounted on metal legs with a door on one side. Sakellson equipped the stove with a pipe and vented it through a hole he had cut in the tent's roof. He clamped metal stovepipe rings to the fabric around the hole in the roof to protect the fabric from the hot stovepipe. In addition, Sakellson placed several layers of aluminum foil underneath the stove to prevent hot ash or coals from burning the tent floor.

Sakellson testified that during the camping trip he had started fires in the stove by using small twigs and paper in combination with charcoal lighter fluid. When he had exhausted the supply of charcoal lighter fluid, he switched to Coleman brand camp-

* EARL R. LARSON, United States Senior District Judge, District of Minnesota, sitting by designation.

ing fuel to start fires in the stove. In doing so, Sakellson would pour a small amount of fuel into a cup and then pour it from the cup onto a log. He would then place the log into the stove and ignite the log with a lighted match. Although Randall had observed Sakellson follow this procedure on several occasions, she had not started a fire in the stove herself prior to November 13, 1975.

The evening of the accident, Sakellson went to sleep around 8:00 p.m. Randall crawled into her separate sleeping bag about an hour later. Shortly thereafter, because she was cold, Randall got out of her sleeping bag to check the fire. She checked the stove and observed that the fire started earlier by Sakellson had gone out. She then poured a small amount of Coleman fuel into a cup and from the cup dribbled the fuel onto one of the logs Sakellson had stored in the tent. According to Randall, the log appeared to soak up the fuel. She then placed the log into the stove and reached in to light it with a match. Flames leaped out of the side door of the stove toward her.

Randall testified that she then turned her back on the stove to reach for a cooking utensil or something with which to close the stove door. When she turned back she observed the wall and ceiling of the tent on fire. Sakellson awoke to Randall's screams and saw flames on top of the can of Coleman fuel and on the wall of the tent behind Randall. He got out of his sleeping bag, grabbed the can, unzipped the only exit to the tent, and threw the can out of the tent. Because the can landed near his truck, Sakellson ran out of the tent and tossed the can a second time before it exploded. When he turned around to get Randall out of the tent, the tent was all aflame.

To make her exit through the tent door, Randall ran through a sheet of flame. As a result of the fire, she received severe burns over fifty percent of her body, including her face, hands, and legs.

Randall brought this action in federal court [1] against the tent manufacturer, Warnaco, Inc., Hirsch-Weis Division, claiming damages for the injuries she suffered in the fire. She sought recovery under strict liability, negligence, and breach of warranty theories, alleging that her injuries resulted from Warnaco's failure to manufacture the tent with flame retardant material, its failure to include a second exit in the tent, and its failure to supply a warning of the tent's flammability. Randall abandoned her breach of warranty theory during trial.

The district court, over Randall's objection, dismissed the claim alleging Warnaco's negligence at the close of Randall's case. At the close of all the evidence, the court submitted the case to the jury on the only remaining theory of recovery—strict liability in tort. On a special verdict form, the jury determined that Randall had failed to prove the elements necessary to hold Warnaco strictly liable. Following entry of judgment and denial of her motion for a new trial, Randall appealed.

II. *Dismissal of Negligence Claim.*

A. *Whether the Strict Liability Theory Subsumed the Negligence Claim.*

Randall maintains that she was entitled to have her negligence theory submitted to the jury because she established a prima facie case of negligence.[2] We agree.

In directing a verdict for Warnaco on negligence, the trial court did not determine that Randall had failed to establish a

---

1. Jurisdiction rests on diversity of citizenship and the requisite amount in controversy. 28 U.S.C. § 1332 (1976). North Dakota law governs the rights and liabilities of the parties.

2. On appeal, Warnaco asserts that Randall failed to establish a prima facie case of negligence, implying that the district court removed the negligence claim on this ground. We have reviewed the transcript and find no reference by the trial court that it directed a verdict on

the negligence claim because Randall failed to make out a submissible case of negligence. In its posttrial memorandum and order denying Randall's motion for a new trial, the court specifically stated that it had directed a verdict on the negligence claim to avoid confusing the jury and because it deemed Randall's negligence claim to be subsumed by the strict liability theory. Thus, we reject Warnaco's characterization of the trial court's ruling.

submissible case on her negligence theory. Instead, the court dismissed her claim alleging Warnaco's negligence to avoid confusing the jury,[3] and because "plaintiff's rights would be better preserved * * * if she were required to pursue the more favorable strict liability theory * * *." *Randall v. Warnaco, Inc., Hirsch-Weis Division*, No. A77–3020, slip op. at 2 (D.N.D. Dec. 11, 1980). In rejecting Randall's motion for a new trial, the trial court further justified its ruling on the ground that Randall's strict liability theory totally subsumed her negligence claim.[4]

**3.** While the court refused to submit Randall's negligence theory to the jury to avoid confusion, it nevertheless submitted the comparative negligence of both Randall and third-party defendant Sakellson. The court relied on *Busch v. Busch Construction, Inc.*, 262 N.W.2d 377 (Minn.1977), as authority for submitting plaintiff's comparative negligence to the jury in a strict liability case. The North Dakota Supreme Court has not yet decided whether comparative negligence applies in a strict liability case. *See Johnson v. Monsanto Co.*, 303 N.W.2d 86, 94 (N.D.1981); *Feuerherm v. Ertelt*, 286 N.W.2d 509, 511 (N.D.1979). In our view, serious doubt exists that North Dakota would follow Minnesota's lead and apply comparative negligence as a defense to strict liability. The North Dakota Supreme Court has adopted the rule of strict liability set out in § 402A of the Restatement (Second) of Torts, and has quoted with approval from comment n to that section. *Olson v. A. W. Chesterton Co.*, 256 N.W.2d 530, 537 (N.D.1977). Comment n to § 402A states:

> n. *Contributory negligence*. Since the liability with which this Section deals is not based upon negligence of the seller, but is strict liability, the rule applied to strict liability cases (see § 524) applies. Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery. [Restatement (Second) of Torts § 402A comment n (1965).]

Regardless of whether North Dakota will ultimately adopt ordinary negligence as a defense to strict liability, we do not accept the argument that an instruction on the defendant's negligence in this case would have confused the jury, inasmuch as the district court instructed on plaintiff's negligence as a defense.

**4.** The trial court reasoned as follows:

> The court recognizes that in some situations it may be to the plaintiff's advantage to have negligence instructions in addition to instructions on strict products liability. *See e.g., Jiminez v. Sears, Roebuck & Company*, 4 Cal.3d 379, 383, 482 P.2d 681, 93 Cal.Rptr. 769, 771 (1971) (applicability of doctrine of res ipsa loquitur). But in the instant case, plaintiff's theory of negligence was subsumed by the strict products liability theory. Implicit in the jury's finding in favor of defendant was the conclusion that neither the non-flame retardant construction of the tent nor the failure to provide a rear exit constituted a design or manufacturing defect which rendered the product unreasonably dangerous, proximately causing plaintiff's injuries. In light of this conclusion, the jury could not consistently find that the tent was negligently designed or manufactured, for if a product is not unreasonably dangerous because of the way it was manufactured, it is not negligent to manufacture it that way. *Halvorson v. American Hoist & Derrick Co.*, 307 Minn. 48, 240 N.W.2d 303, 307 (1976). *See also Wagner v. International Harvester Co.*, 611 F.2d 224, 229 (8th Cir. 1979) (applying Minnesota law); *McIntyre v. Everest & Jennings, Inc.*, 575 F.2d 155, 159 (8th Cir. 1978), *cert. denied*, 439 U.S. 864, 99 S.Ct. 187, 58 L.Ed.2d 173 (1979) (applying Missouri law). Although a verdict of nondefectiveness does not preclude a finding of negligence on other grounds, such as negligent failure to warn, *Wagner, supra* at 229; *Leskey v. Heath Engineering Co.*, Minn., 293 N.W.2d 39, 40–41 (1980); *Bigham v. J. C. Penney Co.*, Minn., 268 N.W.2d 892 (1978), in this case, under the applicable law, there were no grounds of negligence not encompassed by the strict liability theory.

Under North Dakota law, a failure to warn of dangers inherent in a product's intended use and in a use which can be reasonably anticipated, may constitute an unreasonably dangerous defect, subjecting the seller to strict liability in tort. *Schmidt v. Plains Elec., Inc.*, 281 N.W.2d 794, 802 (N.D.1979); *Olson v. A. W. Chesterton Co.*, 256 N.W 2d 530, 535 (N.D.1977). This same responsibility has been recognized in negligence cases, *Seibel v. Symons Corporation*, 221 N.W.2d 50, 54–55 (N.D.1974), except that when a strict liability theory of failure to warn is presented, it relieves the plaintiff of the burden of proving negligence by the manufacturer. *Jahnig v. Coisman*, S.D., 283 N.W.2d 557, 560 (1979).

Our analysis of the law of the case as embodied in the jury instructions, however, demonstrates that the strict liability theory did not necessarily subsume the negligence claim.

The trial court instructed the jury that Randall had the burden of proving each of the following elements to establish strict liability:

First: That the tent involved in this case was a Caravan model tent manufactured and placed in the stream of commerce by defendant Hirsch-Weis. In this case, there is no dispute on this issue.

Second: That the tent was defective when it left the control of defendant, and it was expected that the product would reach and did reach the user, plaintiff, without substantial change in the condition in which it was placed in the stream of commerce by defendant.

Third: That the defect rendered the product unreasonably dangerous to a user, for the use intended.

Fourth: That plaintiff was using the product in a way it was intended to be used, or in such a way as could have been reasonably anticipated by the defendant.

Fifth: That the defective condition was a proximate cause of plaintiff's injuries.
[Instruction No. 22]

In submitting the case to the jury, the court provided a special verdict form which contained the following question:

> In the instant case, the court's instruction 16 provided in part as follows:
> A product may also be defective and unreasonably dangerous by reason of a failure to warn of dangers that can be reasonably anticipated. A manufacturer has a duty to warn of dangers inherent in the product's intended use, and also to warn of dangers involved in a use which can be reasonably anticipated. . . .
> Again, implicit in the jury's finding in favor of defendant was its conclusion that defendant did not fail to warn of dangers so as to render the tent defective and unreasonably dangerous and a proximate cause of plaintiff's injuries. If the tent was not unreasonably dangerous because of a failure to warn, defendant could not be held negligent for such a failure. *Halvorson, supra.* Based upon the instruc-

Has the plaintiff proved by a preponderance of the evidence all the issues she has the burden of proving against defendant as those issues have been set out in these instructions?

The jury answered this question in the negative, leaving the remaining questions on the special verdict form unanswered.

Because this interrogatory was general in form, the basis for the jury's determination that Randall had failed to prove her strict liability theory remains unknown. The jury might have determined that Randall failed to establish the second element of her strict liability claim as set out in the court's instructions because Sakellson substantially changed the tent's condition after it entered the stream of commerce by venting it to accommodate the woodburning stove and pipes. Thus, the jury may have rejected Randall's claim without considering whether the product was defective in fact.

Sakellson's modification of the product, however, need not bar recovery under Randall's negligence theory. Although Sakellson's conduct in modifying the tent might be considered on the issue of proximate cause and in apportioning fault under the negligence theory, the jury could still find Warnaco liable for Randall's injuries based on negligence. *See Bartels v. City of Williston,* 276 N.W.2d 113, 121 (N.D.1979) (pure comparative negligence applies in cases involving more than one tortfeasor). Thus, in light of the instructions and jury verdict, we cannot say that the strict liability theory totally subsumed the negligence claim.[5]

> tions given by the court, a finding of no defect would be inconsistent with a finding of negligent failure to warn. Although the North Dakota Supreme Court has not addressed the relationship between strict liability and negligence in this context, the analysis of the Minnesota court in *Halvorson* is persuasive. [*Randall v. Warnaco, Inc., Hirsch-Weis Division, supra,* slip op. at 2–3.]

5. Strict liability may present a broader theory of recovery in some cases, because it relieves the plaintiff of the burden of establishing the manufacturer's negligence. It does not necessarily follow, however, that a determination that a particular defendant is not strictly liable carries with it an implicit finding that his conduct was not negligent. Because negligence

The conclusion that Vera Randall is entitled to a new trial on her negligence claim receives support from this court's decisions holding that a jury verdict for the plaintiff on a negligence claim is not inconsistent with a verdict for the defendant on a strict liability claim. *See Wagner v. International Harvester Co.*, 611 F.2d 224 (8th Cir. 1979); *McIntyre v. Everest & Jennings, Inc.*, 575 F.2d 155 (8th Cir.), cert. denied, 439 U.S. 864, 99 S.Ct. 187, 58 L.Ed.2d 173 (1978); *Bjerk v. Universal Engineering Corp.*, 552 F.2d 1314 (8th Cir. 1977); *Sterner v. U. S. Plywood-Champion Paper, Inc.*, 519 F.2d 1352 (8th Cir. 1975).

For example, in *Sterner*, plaintiff brought a products liability action against the manufacturer of contact cement for injuries he sustained when the product ignited, causing a flash fire. Sterner pleaded both strict liability and negligence theories based on inadequate warnings regarding the product's flammability. The jury returned a verdict for the manufacturer on the strict liability count and for the plaintiff on the negligence count. *Id.* at 1353. On appeal, this court held that Sterner could recover under his negligence claim, even though he premised both theories on the inadequacy of the warnings, and even though the jury determined that the prod-

uct was not unreasonably dangerous because of inadequate warning labels. *Id.* at 1354-55.

We recognize that the verdicts in *Sterner* may seem inconsistent and irreconcilable. *Id.* at 1355 (Henley, J., concurring). We also note, in a more general sense, that the cases discussing the relationship between strict liability and negligence for failure to provide adequate warnings are confusing. *See Robbins v. Farmers Union Grain Terminal Ass'n*, 552 F.2d 788, 794-95 n.15 (8th Cir. 1977). In the present case, however, we need not confront the apparent inconsistencies in the application of the two theories of recovery. Here, the jury may have absolved Warnaco of liability on the strict liability theory on the basis of product modification without precluding recovery under negligence.[6]

## B. Whether Jury Resolved Issue of Causation.

During trial, Warnaco vigorously contested the sequence of events leading to Randall's injuries. Warnaco introduced evidence to show that Randall's injuries resulted when fuel she had spilled on the floor of the tent, on her hands, and on her clothing, ignited. According to Warnaco's theory of

focuses on the conduct of the defendant and strict liability on the condition of the product, it becomes conceptually impossible to say that a verdict for the defendant in a strict liability count always disposes of plaintiff's negligence claim based on the same alleged defect, unless one assumes that to be negligent the conduct of the manufacturer must render the product unreasonably dangerous in the strict liability sense. At least one jurisdiction has rejected such an assumption. *See Fischer v. Cleveland Punch & Shear Works Co.*, 91 Wis.2d 85, 280 N.W.2d 280, 286 (1979); cf. *Wilson v. General Motors Corp.*, 311 N.W.2d 10, 15 (N.D.1981) (implying that product need not be unreasonably dangerous to hold manufacturer liable for negligence). Thus, the Seventh Circuit, applying Wisconsin law, held that plaintiffs were entitled to have their products liability claims submitted on both negligence and strict liability theories. *Hansen v. Cessna Aircraft Co.*, 578 F.2d 679 (7th Cir. 1978). In so holding, the court observed:

> Since strict liability was adopted in Wisconsin to make recovery easier for plaintiffs in products liability cases, it seems quite

probable that the Wisconsin courts, fearful lest juries might be misled by a strict liability instruction, wanted juries to be able to consider additional bases for recovery, including negligence. Viewed in this light, the Wisconsin Supreme Court's decision to provide alternative negligence and strict liability recovery in products liability cases certainly is not unreasonable. Thus, we conclude that the district court failed to apply Wisconsin's products liability rule when it declined to instruct the jury on both strict liability and negligence. [*Id.* at 685.]

The North Dakota Supreme Court has also recognized that a products liability claim based on inadequate warnings may be predicated on both negligence and strict liability theories. *See Olson v. A.W. Chesterton Co., supra*, 256 N.W.2d at 535, 540.

**6.** On retrial on the issue of negligence, Randall may seek to establish Warnaco's negligence based on its failure to manufacture the tent with flame retardant materials, its failure to include a second exit, and its failure to warn of the tent's flammability.

the case, the combination of the stove and the spilled Coleman fuel caused Randall's injuries, even before the tent had caught fire. Warnaco now insists that the jury verdict on the strict liability theory rests on a finding that Randall failed to establish causation, and, therefore, necessarily disposes of her negligence claim as well.

We recognize that the parties seriously disputed causation, which is an essential element of both negligence and strict liability theories. We disagree, however, with Warnaco's contention that the jury verdict for it on strict liability precludes recovery as a matter of law on Randall's negligence claim. The strict liability instructions required that Vera Randall establish all five elements of strict liability to prevail. Her failure to prove any one element would explain the jury's verdict. Because the form of the verdict permitted the jury to deny recovery on strict liability because of product modification, the jury may not have reached the question of causation. Thus, we cannot say as a matter of law that the jury resolved the question of causation adversely to Randall.

### III. *Instruction on Strict Liability.*

■■■ Randall next asserts that the court improperly instructed the jury that the plaintiff must establish that "the defect rendered the product unreasonably dangerous to a user, *for the use intended.*" Instruction 22 (emphasis added). Randall argues that she should have been required to prove only "that the use made of the [product] was reasonably foreseeable and that the [product] was unreasonably dangerous when so used[.]" *See Hughes v. Magic Chef, Inc.,* 288 N.W.2d 542, 548 (Iowa 1980).

We agree that *Hughes* sets forth the appropriate rule. A single erroneous instruction, however, does not require reversal if a subsequent instruction, or consideration of the entire charge, cures the error. *Wright v. Farmers Co-op of Arkansas and Oklahoma,* 620 F.2d 694, 697 (8th Cir. 1980). The fourth element of instruction 22, quoted *supra* at 8, clearly informed the jury that it could consider whether "plaintiff was using the product in a way it was intended to be used, or in such a way as could have been reasonably anticipated by the defendant." The court's other instructions made clear that Warnaco could be liable if it could have reasonably foreseen the use to which the tent was put. Under these circumstances, the instructions as a whole conformed with the proper standards of strict liability. *See Olson v. A. W. Chesterton Co., supra,* 256 N.W.2d at 535.

### IV. *Evidentiary Rulings.*

Finally, Randall maintains that several of the trial court's evidentiary rulings call for reversal. We specifically address Randall's contention that the court admitted without proper foundation a videotape of an experiment showing five young women each pouring Coleman fuel on a log.

For this demonstration, Warnaco obtained logs from the Bitterroot National Forest in Montana, similar to the one Randall had used to start the fire on the night of the accident. The videotape evidence at issue showed each of the five young women pouring Coleman fuel into a cup and then over one of the logs. In performing this task, each of the subjects spilled varying amounts of fuel on her hands and on the tent's floor.

Randall objected to admission of this evidence on the ground that use of approximately a half cup of fuel by each of the subjects found no support in the record. Randall asserts that she used only a very small amount of fuel on the night of the accident. Therefore, she contends this experimental evidence lacked the requisite foundation for admission.

■■■ The admissibility of experimental evidence rests largely within the discretion of the trial court; the court's determination will not be overturned absent a showing of abuse of discretion. *Wagner v. International Harvester Co., supra,* 611 F.2d at 232. A court may properly admit experimental evidence if the tests were conducted under conditions substantially similar to the actual conditions. *Collins v. B. F. Goodrich Co.,* 558 F.2d 908, 910 (8th Cir. 1977). Admissibility, however, does not depend on perfect identity between actual and experimental

conditions. Ordinarily, dissimilarities affect the weight of the evidence, not its admissibility. *Ramseyer v. General Motors Corp.*, 417 F.2d 859, 864 (8th Cir. 1969).

█ As an experiment to demonstrate the absorption properties of the wooden logs, the evidence was properly admissible and relevant to support Warnaco's theory that Randall suffered her burns when fuel that had run off the log onto the floor of the tent ignited setting Randall on fire. In light of the testimony regarding the amount of fuel used on the night of the accident and the amount used during the experiments, we cannot say that the trial court abused its discretion in admitting the experimental evidence here at issue as against the objection that this evidence lacked adequate foundation.

█ However, to avoid misinterpretation of this ruling, some additional comment seems appropriate. While the experimental evidence here in question may have served the permissible purpose of demonstrating certain physical properties, it also likely served the impermissible purpose of reenacting the accident for the jury.

In the videotape demonstration, Warnaco attempted to duplicate the scene of the accident, using a similar tent and a replica of the stove, assembling articles similar to those in the tent on the night of the accident, and recruiting five young women similar in age and size to Vera Randall. In duplicating the accident scene, Warnaco sought to prove more than the absorption properties of the logs; it portrayed to the jury that on the night of the accident, Vera Randall, like the five young women, poured Coleman fuel on herself and on the floor of the tent. In this regard, the experimental evidence became very close to a reenactment of the accident, and as such its admis-

sion could be deemed unduly prejudicial. *See Brandt v. French*, 638 F.2d 209, 212 (10th Cir. 1981); *Young v. Illinois Central Gulf Railroad Co.*, 618 F.2d 332, 338 (5th Cir. 1980).[7] We do not rule on the admissibility of this evidence on these grounds on this appeal, because appellants failed to object to the evidence as an unfair reenactment.

We have reviewed the other evidentiary rulings raised on appeal in light of the record as a whole. Those rulings largely fell within the trial court's discretion. Additionally, if any error occurred, the error must be deemed harmless.

Accordingly, we affirm the judgment of the district court on the strict liability claim, and reverse and remand for a new trial on the question of negligence.[8] Appellant is entitled to costs on appeal.

ROSS, Circuit Judge, dissenting.

I do not agree with the majority's conclusion that the trial court erred in refusing to submit appellant's negligence claim to the jury in this case. Appellant's negligence count was based primarily on Warnaco's failure to warn the consumer or recall the tent when it allegedly knew there was an extreme flammability problem. Appellant argues, and the majority holds, that generally it would not be inconsistent for the jury to have found the defendant was negligent in failing to warn about the danger but that the product was nondefective for the purposes of strict liability, and that, therefore, the negligence theory should have been presented to the jury in this case. *See Wagner v. International Harvester Co.*, 611 F.2d 224, 229 (8th Cir. 1979) (applying Minnesota law); *McIntyre v. Everest & Jennings, Inc.*, 575 F.2d 155 (8th Cir.), *cert. denied*, 439 U.S. 864, 99 S.Ct. 187, 58

7. Because of the highly persuasive nature of films, a trial judge must exercise great caution when ruling on the admission of films showing an experiment, to assure that the jury will be enlightened, rather than misled. *Jackson v. Fletcher*, 647 F.2d 1020, 1027 (10th Cir. 1981); *Brandt v. French, supra*, 638 F.2d at 212. Given the always variable human factors, when an experiment seeks to show what presumably occurred at the scene of the accident, the party

introducing the evidence must demonstrate a more nearly identical set of conditions than when the experiments merely demonstrate physical properties. *Jackson v. Fletcher, supra*, 647 F.2d at 1027.

8. In light of this ruling, it is our understanding that the third-party action against Sakellson on the negligence theory will be reinstated.

L.Ed.2d 173 (1978) (applying Missouri law); *Bjerk v. Universal Engineering Corp.*, 552 F.2d 1314, 1317 (8th Cir. 1977) (applying Minnesota law); *Sterner v. U.S. Plywood-Champion Paper, Inc.*, 519 F.2d 1352, 1355 (8th Cir. 1975) (applying Iowa law).

Although the issue remains controversial, there is general authority for the proposition that strict liability based on failure to warn of the dangers inherent in an otherwise nondefective product reverts to a negligence basis for liability. Therefore, in certain circumstances when an instruction is given on strict liability failure to warn theory, a negligence instruction is unnecessary and, in fact, giving both instructions may confuse the jury. *See* R. Hirsch & H. Bailey, American Law of Products Liability § 4:13, at 677 (1974). *See, e.g., Gordon v. Niagara Mach. & Tool Works*, 574 F.2d 1182, 1190 (5th Cir. 1978); *Caplaco One, Inc. v. Amerex Corp.*, 435 F.Supp. 1116, 1120 (E.D.Mo.1977), *aff'd*, 572 F.2d 634 (8th Cir. 1978); *Skaggs v. Clairol, Inc.*, 6 Cal.App.3d 1, 85 Cal.Rptr. 584, 588 (1970). *See also* Annot., 53 A.L.R.3d 239, 248 (1973).

I believe that the cases cited by the majority in support of its position must be viewed as being limited to the particular facts and circumstances in those cases, including the instructions actually submitted to the jury. The district court concluded that *under the facts of this case*, considering the law of North Dakota and the *instructions actually presented to the jury*, there "were no grounds of negligence," including failure to warn, "that were not encompassed by the strict liability theory" submitted to the jury. *Randall v. Warnaco, Inc.*, *supra*, slip op. at 3. It is well established that in diversity cases "the opinions of an experienced local district judge with respect to [state] law are entitled to great weight." *Western Casualty and Surety Co. v. Crawford*, 635 F.2d 667, 671 (8th Cir. 1980) (citation omitted).

Although the district court recognized that the North Dakota Supreme Court had not directly addressed the relationship between strict liability and negligence in the failure to warn context, the court found ample support for its conclusion that the same duty to warn of dangers inherent in a product's use or those uses which can be reasonably anticipated exists in both negligence and strict liability under North Dakota law. *See Olson v. A. W. Chesterton Co.*, 256 N.W.2d 530, 535 (N.D.1977).

In *Seibel v. Symons Corp.*, 221 N.W.2d 50 (N.D.1974), a negligent failure to warn products liability case, the court stated the rule to be that

a manufacturer supplying a machine has a duty to exercise reasonable care to inform the user of any dangerous condition and character of the machine when put to the use for which it was manufactured and sold, where such danger is known or which reasonably should have been known by the manufacturer in the exercise of ordinary care.

*Id.* at 54 (citation omitted). In *Schmidt v. Plains Electric*, 281 N.W.2d 794 (N.D.1979), a products liability case based on strict liability, the court, quoting this same language, concluded that "[a] product may be considered 'defective' so as to put into operation the strict liability doctrine if the manufacturer or seller has reason to anticipate a danger from the use of the product and fails to give an appropriate warning." *Id.* at 802 (citation omitted). The district court in the instant case also noted that if there was a difference between negligence and strict liability in the failure to warn situation, it was that strict liability is easier to establish in that it relieves the plaintiff of the burden of proving negligence. *See Jahnig v. Coisman*, 283 N.W.2d 557, 561 (S.D. 1979).

The trial court's instruction sixteen informed the jury that

[a] product may also be defective and unreasonably dangerous by reason of a failure to warn of dangers that can be reasonably anticipated. A manufacturer has a duty to warn of dangers inherent in the product's intended use, and also to warn of dangers involved in a use which can be reasonably anticipated.

I agree with the trial court that, in light of this instruction, the jury could not have consistently found no defect based on a failure to warn under strict liability, but

found the defendant negligent in its failure to warn.

Special interrogatory number one submitted by the trial court to the jury[1] required the jury to find each of five elements for the appellant to prevail under strict liability:

First: That the tent involved in this case was a Caravan model tent manufactured and placed in the stream of commerce by defendant Hirsch-Weis. In this case, there is no dispute on this issue.

Second: That the tent was defective when it left the control of defendant, and it was expected that the product would reach and did reach the user, plaintiff, without substantial change in the condition in which it was placed in the stream of commerce by defendant.

Third: That the defect rendered the product unreasonably dangerous to a user, for the use intended.

Fourth: That plaintiff was using the product in a way it was intended to be used, or in such a way as could have been reasonably anticipated by the defendant.

Fifth: That the defective condition was a proximate cause of plaintiff's injuries.[2]

The jury concluded that appellant had failed to prove all five of these elements. Unless appellant was required to prove one of these elements under a strict liability theory, but not under a negligence theory, the appellant's negligence claim was totally encompassed by the strict liability claim and there would have been no prejudicial error in the court's failure to instruct the jury as to negligence.

Appellant argues, and the majority appears to conclude, that she was prejudiced in that under her negligence claim she was not required to prove the second element of strict liability, i.e., that the tent was defective when it left the hands of the defendant and reached the user without a substantial change in the condition in which it was placed in the stream of commerce. However, it should be noted that "[g]enerally, in order to recover under either negligence or strict liability it is necessary to prove that a defect existed in the product at the time the manufacturer parted with possession." *McIntyre v. Everest & Jennings, Inc., supra,* 575 F.2d at 157; *Lindsay v. McDonnell Douglas Aircraft Corp.,* 460 F.2d 631, 637 (8th Cir. 1972). *See generally* Annot., 41 A.L.R.3d 1251, 1253 (1972) (and cases cited therein).

There is little reason to doubt that this general rule is the law of North Dakota.[3] Thus, the basic principle embodied in the second element of the district court's instruction number 22 would appear to be an element of either a strict liability or a negligence theory of recovery, with the jury entertaining essentially the same considerations under either theory. For this reason, I believe that the failure of the trial court to instruct on negligence in the circumstances of this case did not prejudice the appellant in that her negligence claim was subsumed by the strict liability instructions actually given.

---

1. Interrogatory No. 1 provided in part:

    Has the plaintiff proved by a preponderance of the evidence all the issues she has the burden of proving against defendant as those issues have been set out in these instructions? (See Instruction No. 22).

    Answer:   Yes___   No___

    If your answer to Interrogatory No. 1 is "No" you need not consider the remaining interrogatories. (R:123).

2. Instruction No. 22 (R:115).

3. It would appear that under current North Dakota law covering products liability the alteration or modification of a product after the sale to the initial user or consumer that is a substantial contributory cause of the injury bars recovery against the manufacturer regardless of the legal theory upon which the action is based. *See* N.D.Cent. Code §§ 28–01.1–04 & –06 (1979).